**ROBINS KAPLAN LLP**
Amy M. Churan, SBN 216932
*AChuran@RobinsKaplan.com*
Daniel L. Allender, SBN 264651
*DAllender@RobinsKaplan.com*
2049 Century Park East, Suite 3400
Los Angeles, CA  90067
Telephone: (310) 552-0130
Facsimile:  (310) 229-5800

Attorneys for Defendant
AFFILIATED FM INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE ARTISTS AGENCY, LLC, a Delaware limited liability company; and CAA HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY, a Rhode Island limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-08314-AB-GJS<br><br>**AFFILIATED FM INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  March 25, 2022<br>Time:  10:00 a.m.<br>Location:  Courtroom 7B |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61887435.3

# **TABLE OF CONTENTS**

**Page**

I.      Introduction ...................................................................................... 1

II.     Background and Relevant Policy Provisions ...................................... 3

        A.      Business Interruption Coverage .............................................. 4

        B.      Civil and Military Authority Coverage .................................... 5

        C.      Property Damage Coverage—Protection and Preservation of
                Property .................................................................................. 6

        D.      Extra Expense ......................................................................... 6

        E.      Ingress/Egress ........................................................................ 6

        F.      Supply Chain .......................................................................... 6

        G.      The Contamination Exclusion ................................................. 7

        H.      The Loss of Use Exclusion ..................................................... 7

III.    CAA Fails to State a Claim for Breach of Contract ........................... 7

        A.      General Legal Principles ......................................................... 8

        B.      There Is No Coverage for CAA's Losses .............................. 10

                1.      CAA does not allege "physical loss or damage" ..................... 10

                        a.      California law defines "physical loss or damage" .......... 11

                        b.      Government closure orders do not cause a
                                "physical loss" ................................................. 11

                        c.      The coronavirus itself does not cause physical loss
                                or damage ........................................................ 14

                2.      CAA's loss is not "of the type insured" .................................. 19

                        a.      The Contamination Exclusion bars CAA's claims ......... 19

                        b.      The Loss of Use Exclusion prevents CAA's claims ....... 20

IV.     CAA Fails to State a Claim for Bad Faith ....................................... 22

V.      Conclusion .................................................................................... 23

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*,
   __ F.4th __, 2021 WL 6109961 (2d Cir. Dec. 27, 2021) ................................... 12

*ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*,
   17 Cal. App. 4th 1773 (1993) ................................................................ 8

*AIU Ins. Co. v. Superior Ct.*,
   51 Cal. 3d 807 (1990) ........................................................................ 8

*Another Planet Ent., LLC v. Vigilant Ins. Co.*,
   No. 20-CV-07476-VC, 2021 WL 774141 (N.D. Cal. Feb. 25, 2021) ............... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 9

*BA LAX, LLC et al. v. Hartford Fire Ins. Co.*,
   519 F. Supp. 3d 711 (C.D. Cal. 2021) ................................................... 14

*Biltrite Furniture, Inc. v. Ohio Sec. Ins. Co.*,
   2021 WL 3056191 (E.D. Wis. July 20, 2021) .......................................... 21

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*,
   19 F.4th 1002 (7th Cir. 2021) ......................................................... 20, 21

*Buxbaum v. Aetna Life & Cas. Co.*,
   103 Cal. App. 4th 434 (2002) ............................................................. 8

*Cafasso v. Gen. Dynamics C4 Sys.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................................. 9

*Cardenas v. McLane Foodservice, Inc.*,
   No. CV 10-473, 2011 WL 2714430 (C.D. Cal. Jan. 31, 2011) ...................... 8

*Cordish Companies, Inc. v. Affiliated FM Ins. Co.*,
   __ F. Supp. 3d ___, No. CV ELH-20-2419, 2021 WL 5448740 (D.
   Md. Nov. 22, 2021) ........................................................................ 20

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3

*Daneli Shoe Co. v. Valley Forge Ins. Co.*,
No. 20-CV-1195 TWR (WVG), 2021 WL 1112710 (S.D. Cal. Mar. 17, 2021) ............................................................................................ 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .................................................................. 9

*Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*,
No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) .............. 12

*Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*,
___ F.4th ___, 2021 WL 6048858 (10th Cir. Dec. 21, 2021) ............. 12

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) .......................................................................... 22

*Hicks v. E.T. Legg & Assocs.*,
89 Cal. App. 4th 496 (2001) ................................................................. 22

*Islands Rests., LP v. Affiliated FM Ins. Co.*,
No. 3:20-CV-02013-H-JLB, 2021 WL 1238872 (S.D. Cal. Apr. 2, 2021) (Huff, J.) ............................................................................... 13, 14

*Jamison v. Certain Underwriters at Lloyd's*,
599 F. App'x 720 (9th Cir. 2015) ........................................................... 9

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................................ 9

*Komorsky v. Farmers Ins. Exch.*,
33 Cal. App. 5th 960 (2019) ................................................................... 8

*Lockheed Martin Corp. v. Cont'l Ins. Co.*,
134 Cal. App. 4th 187 (2005) ................................................................. 8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ................................................................ 9

*Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*,
492 F. Supp. 3d 1051 (C.D. Cal. 2020) ...................................... 2, 16, 19

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3

*Mark's Engine Co. v. The Travelers Indem. Co. of Conn.*,
No. 2:20-CV-04423-AB, 2020 WL 5938691 (C.D. Cal. Oct. 2,
2020) ................................................................................................................. 1

*Mashantucket Pequot Tribal Nation v. Factory Mut. Ins. Co.*,
No. X07HHDCV216140378S, 2021 WL 4477089 (Conn. Super.
Ct. Aug. 18, 2021) ............................................................................................ 20

*MGA Entertainment, Inc. v. Affiliated FM Ins. Co.*,
No. 2:20-cv-10499-MWF, 2021 WL 2840456 (C.D. Cal. July 2,
2021) ............................................................................................................ 1, 13

*Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*,
No. 20-CV-1470, 2021 WL 4260785 (D. Colo. Sept. 17, 2021) ...................... 20

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
187 Cal. App. 4th 766 (2010) .............................................................. 10, 11, 13

*Mudpie, Inc., v. Travelers Cas. Ins. Co. of Am.*,
15 F. 4th 885 (9th Cir. Oct. 1, 2021) ......................................................*passim*

*Mudpie, Inc., v. Travelers Cas. Ins. Co. of Am.*,
No. 20-16858, 2021 WL 4486509 (9th Cir. Oct. 1, 2021) ............................... 12

*O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*,
512 F. Supp. 3d 1019 (N.D. Cal. 2021) ............................................................ 2

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
2 F.4th 1141 (8th Cir. 2021) ............................................................................ 12

*Out West Rest. Grp., Inc. v. Affiliated FM Ins. Co.*,
No. 20-cv-06786-TSH, 2021 WL 1056627 (N.D. Cal. Mar. 19,
2021) ....................................................................................................... 2, 13, 14

*Palmdale Estates, Inc. v. Blackboard Ins. Co.*,
510 F. Supp. 3d 874 (N.D. Cal. 2021) ............................................................. 18

*Palmer v. Truck Ins. Exch.*,
21 Cal. 4th 1109 (1999) ..................................................................................... 8

*Phan v. Nationwide Gen. Ins. Co.*,
Case No. CV 20-7616-MWF, 2021 WL 609845 (C.D. Cal. Feb. 1,
2021) ................................................................................................................ 19

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

6

61887435.3

*Protégé Rest. Partners LLC v. Sentinel Ins. Co.*,
    517 F. Supp. 3d 981 (N.D. Cal. 2021)................................................................15

*Ralph Lauren Corp. v. Factory Mut. Ins. Co.*,
    2021 WL 1904739 (D.N.J. May 12, 2021) ........................................................20

*Ruiz Food Prods., Inc. v. Catlin Syndicate Ltd.*,
    588 F. App'x 704 (9th Cir. 2014)..........................................................................8

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*,
    20 F.4th 327 (7th Cir. 2021)................................................................................12

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
    15 F.4th 398 (6th Cir. 2021)................................................................................12

*Selane Prods., Inc. v. Cont'l Cas. Co.*,
    ___ F.Supp.3d ___, 2020 WL 7253378 (C.D. Cal. Nov. 24, 2020) .................21

*Simon Mktg., Inc. v. Gulf Ins. Co.*,
    149 Cal. App. 4th 616 (2007)..............................................................................11

*Sky Flowers*, 2021 WL 1164473 ............................................................................20

*Sony Comput. Ent. Am. Inc. v. Am. Home Assurance Co.*,
    532 F.3d 1007 (9th Cir. 2008)...............................................................................8

*The Inns by the Sea v. California Mut. Ins. Co.*,
    ___ Cal. App. 5th ___, No. D079036, 2021 WL 5298480 (Cal. Ct.
    App. Nov. 15, 2021) ...................................................................................*passim*

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
    17-cv-04908-AB, 2018 WL 3829767 (C.D. Cal. 2018)....................................16

*Tralom, Inc. v. Beazley USA Servs., Inc.*,
    Case No. 2:20-cv-08344-JFW, 2020 WL 8620224 (C.D. Cal. Dec.
    29, 2020)..............................................................................................................14

*Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*,
    495 F. Supp. 3d 848 (C.D. Cal. Oct. 19, 2020)..................................................19

*Twombly*, 550 U.S..................................................................................................9

*Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*,
    929 F.3d 1143 (9th Cir. 2019).............................................................................10

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61887435.3

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
514 F. Supp. 3d 1217 (S.D. Cal. 2021) ................................................ 15

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
498 F. Supp. 3d 1233 (C.D. Cal. 2020) ............................................... 18

*Waller v. Truck Ins. Exch.*,
11 Cal. 4th 1 (1995) ............................................................... 8, 9, 22

*Ward Gen. Ins. Servs. Inc. v. Emps. Fire Ins. Co.*,
114 Cal. App. 4th 548 (2003) ............................................................ 11

*Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*,
517 F. Supp. 3d 1096 (S.D. Cal. 2021) ................................................ 15

*Whiskey River on Vintage, Inc. v. Illinois Cas. Co.*,
503 F. Supp. 3d 884 (S.D. Iowa 2020) ................................................ 21

*WM Bang LLC v. Travelers Cas. Ins. Co.*,
___ F.Supp.3d ___, 2021 WL 4150844 (S.D.N.Y. Sept. 13, 2021) ................. 20

*Zebra Techs. Corp. v. Factory Mut. Ins. Co.*,
No. 20-CV-05147, 2021 WL 4459532 (N.D. Ill. Sept. 29, 2021) .................... 20

**Statutes**

Cal. Civ. Code § 1641 .................................................................... 8

**Other Authorities**

10A Couch on Insurance (3d ed. 2005) § 148:46 ....................................... 11

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61887435.3

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on March 25, 2021, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7B of the above-titled court, located at First Street Courthouse, 350 West First Street, Los Angeles, California 90012, defendant Affiliated FM Insurance Company will and hereby does move this Court for an order granting judgment on the pleadings in favor of defendant Affiliated FM Insurance Company and against plaintiffs Creative Artists Agency, LLC and CAA Holdings, LLC. This motion is made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that the complaint filed by plaintiffs fails to state a claim upon which relief can be granted.

This motion will be based on this notice, the attached memorandum of points and authorities, the records and pleadings on file herein, and such other and further oral and documentary evidence as may be presented at the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on November 2, 2021.

DATED: January 12, 2022            **ROBINS KAPLAN LLP**

By: /s/ Amy M. Churan
      Amy M. Churan

**ATTORNEYS FOR DEFENDANT
AFFILIATED FM INSURANCE
COMPANY**

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

Plaintiffs Creative Artists Agency, LLC and CAA Holdings, LLC (collectively, "CAA") are entertainment and sports talent agencies that brought this action against its property insurer, Affiliated FM Insurance Company ("AFM"), claiming coverage for losses related to the COVID-19 pandemic. CAA alleges that its operations in the United States and United Kingdom were temporarily interrupted by government orders intended to limit the spread of SARS-CoV-2, the virus that causes COVID-19.  However, the Ninth Circuit, the California Court of Appeal, and the overwhelming majority of California courts, including this one, have already concluded that there is no insurance coverage of the type sought by CAA in this case under the plain language of CAA's Policy.[1] *See Mudpie, Inc., v. Travelers Cas. Ins. Co. of Am.*, 15 F. 4th 885 (9th Cir. Oct. 1, 2021); *The Inns by the Sea v. California Mut. Ins. Co.*, ___ Cal. App. 5th ___, No. D079036, 2021 WL 5298480, at *9 (Cal. Ct. App. Nov. 15, 2021); *MGA Entertainment, Inc. v. Affiliated FM Ins. Co.*, No. 2:20-cv-10499-MWF, 2021 WL 2840456, at *3 (C.D. Cal. July 2, 2021); *Mark's Engine Co. v. The Travelers Indem. Co. of Conn.*, No. 2:20-CV-04423-AB, 2020 WL 5938691, at *3 (C.D. Cal. Oct. 2, 2020).

AFM is entitled to judgment on the pleadings for three independent reasons. *First*, the Policy only covers a "Business Interruption" loss that is a "direct result of physical loss or damage." (Policy, ECF No. 1-1 at 239.) CAA alternates

---

[1] CAA's complaint references two different polices. Policy No. SS603 for the term 2/15/2019 through 2/15/20; and Policy No. SS980 for the term 2/15/2020 through 2/15/2021.  Because the relevant provisions of both policies are identical, they are collectively referenced as the "Policy." Furthermore, since all of CAA's alleged losses occurred after March 1, 2020, all citations and pin cites are to Policy No. 980, which is attached to the Complaint as Exhibit 2. This Motion is based solely on the facts alleged in the complaint. AFM does not take any position regarding the date(s) or occurrence(s) of any losses alleged. All rights under the Policy are reserved.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR JUDGMENT ON THE PLEADINGS

between two theories of "physical loss or damage." On the one hand, CAA argues that government orders issued in response to the pandemic caused physical damage by preventing the use of insured property. (Compl. ¶ 36.)  On the other hand, CAA alleges, on information and belief, that the virus may have been present on property, causing physical damage. (Compl. ¶ 100.) Both of these theories have been repeatedly dismissed by California courts. *See Out West Rest. Grp., Inc. v. Affiliated FM Ins. Co.*, No. 20-cv-06786-TSH, 2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021) ("The overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage."); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 512 F. Supp. 3d 1019, 1024 (N.D. Cal. 2021) ("[T]he presence of the virus itself, or of individuals infected with the virus, at [O'Brien's] business premises or elsewhere [does] not constitute direct physical loss of or damage to property.").

*Second*, judgment on the pleadings is also warranted because CAA's Policy contains a "Contamination Exclusion," which excludes losses related to the "inability to use or occupy property" that is "due to" a "virus." (Policy, ECF No. 1-1 at 230 & 267.) To the extent that CAA is relying on the presence of a virus on or in property as the basis for claiming physical loss or damage, such a claim is barred by the Contamination Exclusion. *See Mudpie*, 15 F. 4th at 893 (holding a virus exclusion to be enforceable); *Mark's Engine Co.*, 492 F. Supp. 3d at 1057 (same).

*Third*, judgment on the pleadings is warranted because CAA's Policy includes an express exclusion for a "loss of use." (Policy, ECF No. 1-1 at 224.) CAA alleges that the "use and functionality" of insured property was substantially impaired by government restrictions and the pandemic more generally. (Compl. ¶ 4.) CAA also alleges that these government orders "limited and disrupted the use and operations of CAA's insured locations." (Compl. ¶ 36.) All of these claims are directly barred by the Loss of Use Exclusion.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

2

Each of these three Policy requirements and exclusions are independently dispositive of CAA's claims. Judgment should be therefore entered in favor of AFM.

## II.   Background and Relevant Policy Provisions

This Motion raises a pure legal question concerning the interpretation of CAA's Policy with AFM.

CAA alleges that the "pandemic and resulting civil authority orders" in the United States and United Kingdom significantly disrupted CAA's operations. (Compl. ¶¶ 4, 98.) CAA blames these orders for all of its damages.  CAA also admits that these orders were issued "due to the presence of SARS-CoV-2 throughout the country"—in other words, CAA does not allege that any of the orders were issued in response to the presence of the virus on any specific property. CAA also does not allege that the virus was actually present on any specific property, such as property owned by CAA.  Instead, CAA alleges it is "informed and believes, and thereon alleges" that SARS-CoV-2 was present. (Compl. ¶ 3.) CAA also does not allege that any insured property was damaged or closed due to the actual presence of the virus or that CAA incurred any expenses or costs related to repairing or replacing damaged property.

When CAA notified AFM of this alleged loss, AFM acknowledged there was potential coverage available pursuant to the Communicable Disease provisions of the Policy.[2] (Compl. ¶ 7.) When AFM requested information that would show whether coverage was available under the Communicable Disease provisions, CAA

_____

[2] The Policy's Communicable Disease–Property Damage and Communicable Disease-Business Interruption provisions, unlike the other coverages at issue, do not require "physical loss or damage" and act as limited exceptions to the exclusions cited above.  The two provisions each provide up to $100,000 in annual aggregate coverage ($200,000 collectively) assuming the coverage conditions are satisfied.  The provisions require the "actual not suspected presence of communicable disease" at an insured location, among other conditions.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

3

chose not to respond and filed this lawsuit instead. (Compl. ¶¶ 7–11.)[3] Because there are no other types of coverages available, under the plain language of the Policy, judgment on the pleadings is warranted.

The general framework of the Policy "covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, *except as hereinafter excluded* …." (Policy, ECF No. 1-1 at 211) (emphasis added). That is, to the extent there is physical loss or damage to property that is covered by the Policy, and assuming other requirements are met, such loss or damage will be covered unless an exclusion applies. As the preamble to the "EXCLUSIONS" provisions of the Property Damage section notes, "[i]n addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated[.]" (*Id.* at 227.) Therefore, the basic functioning of the Policy is as follows: an event of physical loss or damage to a covered property will be covered if the factual predicate is met, unless an exclusion applies, and an exclusion applies unless an exception to that exclusion is "otherwise stated."

The Policy then details specific coverages and requirements to trigger those coverages, which are subject to certain exclusions and specified limits and sublimits. The Policy also includes two unambiguous exclusions that apply here: the "Contamination Exclusion" and the "Loss of Use Exclusion." Both of these exclusions appear under the Exclusions Section and apply to the entire Policy, including coverages provided under the "Business Interruption" section.

### A.     Business Interruption Coverage

CAA's complaint primarily relies on the "Business Interruption" coverages. (Compl. ¶ 68.) The Policy states the full terms and conditions for this type of

---

[3] While the complaint alleges that coverage is available under the Communicable Disease provisions, CAA does not allege AFM denied coverage under those provisions. (*See* Compl. ¶¶ 8 & 90–93.) Therefore, these coverages are not included in CAA's claim for breach of contract.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

4

coverage. Among other things, the Policy states:

> The Business Interruption loss, as provided in the Business Interruption Coverage and Business Interruption Coverage Extensions of this section, is subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.

(Policy, ECF No. 1-1 at 244.) In addition, under the heading, "Loss Insured," the Policy further states:

> This Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a ***direct result of physical loss or damage of the type insured***: (1) To property described elsewhere in this Policy and not otherwise excluded by this Policy.

(*Id.*) (emphasis added). Further, the "BUSINESS INTERRUPTION EXCLUSIONS" section similarly notes that the exclusions detailed therein apply "[i]n addition to the exclusions elsewhere in this Policy." (*Id.* at 248.) Because CAA has not alleged any "physical loss or damage" in its complaint, no coverage is available under these provisions.

## B.   Civil and Military Authority Coverage

CAA's complaint also cites the Business Interruption Coverage Extension provisions related to Civil or Military Authority. (Compl. ¶¶ 71–73.) With respect to this extension, among other things, the Policy states:

> This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a location provided such order is ***the direct result of physical damage of the type insured*** at a location or within five (5) statute miles of it.

(Policy, ECF No. 1-1 at 249) (emphasis added). Because this extension has the same requirement of "physical damage of the type insured" that is required for the Business Interruption coverages generally, there is no coverage under the Civil or Military Authority provision of the Policy.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR JUDGMENT ON THE PLEADINGS

1
2
3
4
5
6
7
8
9
10
11

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Property Damage Coverage—Protection and Preservation of Property

CAA's complaint additionally cites the Policy's provisions concerning Protection and Preservation of Property—Property Damage. (Compl. ¶ 67.) Like Business Interruption, this provision only applies when the policyholder has suffered insured physical loss or damage:

> This Policy covers the reasonable and necessary costs incurred for: . . . Actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, *insured physical loss or damage* to such insured property.

(Policy, ECF No. 1-1 at 240) (emphasis added). In other words, this provision requires the same physical loss or damage that is required for coverage above.

### D.    Extra Expense

CAA also cites the Policy provisions related to Business Interruption coverages for "Extra Expense." (Compl. ¶ 69–70.) However, the Policy plainly states that the "Extra Expense Period of Liability is … the period starting from the time of *the physical loss or damage of the type insured*." (Policy, ECF No. 1-1 at 248) (emphasis added). As above, there is no coverage for Extra Expense unless the requirement of "physical loss or damage" has been met.

### E.    Ingress/Egress

CAA also cites the Business Interruption Coverage Extension provisions related to Ingress/Egress. (Compl. ¶¶ 77–78.) Like the other coverages cited above, this provision only applies "when ingress to or egress from a described location(s) is physically prevented, either partially or totally, *as a direct result of physical loss or damage of the type insured* to property of the type insured …." (Policy, ECF No. 1-1 at 252) (emphasis added).

### F.    Supply Chain

Finally, CAA cites the extension of Business Interruption Coverage

61887435.3

Extension provisions for Supply Chain.  (Compl. ¶ 79–81.) As with all the other coverage provisions cited in the complaint, this provision only applies to the "loss incurred by the Insured … *directly resulting from physical loss or damage of the type insured* to property of the type insured at the premises of" the supply chain locations identified in the Policy. (Policy, ECF No. 1-1 at 256.)

### G.    The Contamination Exclusion

In addition to the coverage provisions cited above, the Policy also specifically excludes "contamination, and any cost *due to* contamination *including the inability to use or occupy property* or any cost of making property safe or suitable for use or occupancy." (Policy, ECF No. 1-1 at 230) (emphasis added). The Policy defines the term "contamination" to mean "any condition of property *due to the actual or suspected presence of* any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease causing or illness causing agent, fungus, mold or mildew." (*Id.* at 267) (emphasis added).

### H.    The Loss of Use Exclusion

The Policy also has a list of losses that are specifically excluded from the Policy. Relevant here, one of those exclusions applies to: "Loss of market or *loss of use*." (Policy, ECF No. 1-1 at 229.) The Loss of Use Exclusion appears in a list of other exclusions, under the heading, "**<u>EXCLUSIONS</u>**," which heading is in a much larger font than the surrounding text. (*Id.* at 227.) The Loss of Use Exclusion itself also appears in the same font and density as other Policy provisions. (*Id.* at 229.) This Exclusion is also referenced in the Policy's statement of coverage, which says: "all risks of physical loss or damage, except as hereinafter excluded." (*Id.* at 211.)

## III.   CAA Fails to State a Claim for Breach of Contract

This Motion raises a pure legal question: can a virus, or a government order intended to slow the spread of that virus, generate the "physical loss or damage" required for coverage under CAA's Policy?

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

7

61887435.3

1    In the wake of COVID-19, the Ninth Circuit, this Court, and California

2    courts in general have repeatedly held that it does not. Because interpretation of an

3    insurance contract presents a question of law that the Court may resolve on the

4    pleadings, AFM is entitled to judgment in its favor.

5         **A.    General Legal Principles**

6         Under California law, CAA must prove that the damage alleged is within the

7    scope of the insurance coverage provided by the Policy. *Buxbaum v. Aetna Life &*

8    *Cas. Co.*, 103 Cal. App. 4th 434, 441 (2002). The interpretation of an insurance

9    contract is a question of law. *Ruiz Food Prods., Inc. v. Catlin Syndicate Ltd.*, 588 F.

10   App'x 704, 705 (9th Cir. 2014); *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18

11   (1995). Where, as here, policy language is clear, it governs, and the policy

12   provisions and exclusions must be enforced as written. *Palmer v. Truck Ins. Exch.*,

13   21 Cal. 4th 1109, 1115–17 (1999)).

14        The plain language of the insurance policy governs its interpretation.

15   *Komorsky v. Farmers Ins. Exch.*, 33 Cal. App. 5th 960, 971 (2019). In construing

16   policy language, courts do not consider drafting history or extrinsic evidence. *ACL*

17   *Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1790–

18   1791 (1993). "The terms in an insurance policy must be read in context and in

19   reference to the policy as a whole, with each clause helping to interpret the other."

20   *Sony Comput. Ent. Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th

21   Cir. 2008). California requires courts to give effect to every term in a policy so

22   none is "read out" of the contract or rendered meaningless. *See AIU Ins. Co. v.*

23   *Superior Ct.*, 51 Cal. 3d 807, 838 (1990); *see also* Cal. Civil Code § 1641.

24   Moreover, where a policy provision has been judicially construed, that judicial

25   construction is read into the policy. *Lockheed Martin Corp. v. Cont'l Ins. Co.*, 134

26   Cal. App. 4th 187, 197 (2005).

27        "A motion for judgment on the pleadings must be evaluated under the same

28   standard applicable to motions to dismiss pursuant to Rule 12(b)(6)." *Cardenas v.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

8

61887435.3

*McLane Foodservice, Inc.*, No. CV 10-473, 2011 WL 2714430, at *1 (C.D. Cal. Jan. 31, 2011); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("'the same standard of review' applies to motions brought under either [Rule 12(b)(6) or 12(c)]") (citing *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). When one party brings a pleadings motion in an insurance case, this Court must apply the plain language of the policy to determine whether the insured's complaint states a claim as a matter of law. *See Jamison v. Certain Underwriters at Lloyd's*, 599 F. App'x 720, 721 (9th Cir. 2015) (citing *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 962–63 (2010)).

Like a motion to dismiss, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). Though the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party[,]" *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Rather, the Court should accept as true the language of an insurance policy attached to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

In analyzing coverage under a policy, "a court must examine the coverage provisions to determine whether a claim falls within [the policy terms]." *Waller*, 11 Cal. 4th at 16 (citation omitted). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the

MOTION FOR JUDGMENT ON THE PLEADINGS

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61887435.3

1  claim is specifically excluded." *Universal Cable Prods., LLC v. Atl. Specialty Ins.*
2  *Co.*, 929 F.3d 1143, 1151 (9th Cir. 2019) (quoting *MacKinnon v. Truck Ins. Exch.*,
3  31 Cal. 4th 635, 648 (2003)). Because the "physical loss or damage" requirement is
4  part of the insuring clause, CAA has the burden of proving it suffered losses that
5  were the "direct result of physical loss or damage of the type insured." *See MRI*
6  *Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th
7  766, 778 (2010); *see also Mudpie*, 15 F. 4th at 890 ("Where, as here, a policy
8  covers 'direct physical loss of or damage to' property, the 'direct physical loss
9  requirement is part of the policy's insuring clause and accordingly falls within the
10  insured's burden of proof.") (internal quotation and alterations omitted).

**B.    There Is No Coverage for CAA's Losses**

12      For each of the coverages alleged to be at issue, there is no coverage under
13  the plain language of the Policy unless those losses are the "direct result of physical
14  loss or damage of the type insured."[4] This unambiguous language imposes two
15  separate requirements. First, there must be a "***physical loss or damage***" and,
16  second, it must be "***of the type insured***." CAA fails to plausibly allege either
17  requirement.

**1.    CAA does not allege "physical loss or damage"**

19      CAA fails to plausibly allege that its losses were the "direct result of physical
20  loss or damage."  Instead, CAA alleges that the "governmental orders" caused an
21  interruption and suspension to the business operations of CAA. (Compl. ¶ 4.) CAA
22  also alleges that "SARS-CoV-2 physically alters the air in which it is found and the
23  surfaces of property on which it lands[,]" and that CAA "is informed and believes,
24  and thereon alleges, that SARS-CoV-2 was present at various times during the

[4] *See* Business Interruption, Policy, ECF No. 1-1 at 244; Civil and Military
Authority, *id.* at 249; Protection and Preservation of Property, *id.* at 240; Extra
Expense, *id.* at 248; Ingress/Egress, *id.* at 252; Supply Chain, *id.* at 256.

relevant AFM policy periods on and in its insured properties." (Compl. ¶ ¶ 3 and 100.) California courts, including this one, have uniformly held that neither the physical presence of COVID-19 nor these kinds of COVID-19 orders constitute "physical loss or damage." Therefore, the first Policy requirement is unmet.

### a.  *California law defines "physical loss or damage"*

Even before the pandemic, California had a robust body of law addressing the common insurance requirement of "physical loss or damage." For example, the California Court of Appeal interpreted the phrase "direct physical loss of or damage to property" as requiring some "distinct, demonstrable, physical alteration of the property." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779–80 (2010); *accord Simon Mktg., Inc. v. Gulf Ins. Co.*, 149 Cal. App. 4th 616, 623 (2007) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer where the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (quoting 10A Couch on Insurance (3d ed. 2005) § 148:46, p. 148–81.)); *Ward Gen. Ins. Servs. Inc. v. Emps. Fire Ins. Co.*, 114 Cal. App. 4th 548, 556–57 (2003) ("We conclude the loss of the database, with its consequent economic loss, but with no loss of or damage to tangible property, was not a 'direct physical loss of or damage to' covered property under the terms of the subject insurance policy . . . .").

### b.  *Government closure orders do not cause a "physical loss"*

During the pandemic, California courts have extended the reasoning of *MRI Healthcare* and related authorities to hold that government orders intended to limit the spread of the pandemic did not result in the type of "physical loss or damage" required by an insurance policy. For example, the Ninth Circuit recently affirmed the dismissal of a complaint nearly identical to the one alleged by CAA, holding

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR JUDGMENT ON THE PLEADINGS

that government closure orders issued in response to the pandemic do not constitute "direct physical loss or damage." *See Mudpie, Inc., v. Travelers Cas. Ins. Co. of Am.*, No. 20-16858, 2021 WL 4486509, at *1, *5 (9th Cir. Oct. 1, 2021).

In *Mudpie*, the appellant insured alleged that its losses were caused by government closure orders that prevented it from operating its store. *Id.* at *5. The appellant urged the court to interpret "direct physical loss of or damage to" as synonymous with "loss of use." *Id.* The court disagreed, stating that California law interprets "direct physical loss" to contemplate an *actual* change in the insured property—there must be a "distinct, demonstrable, physical alteration." *Id.* at *4 (quoting *MRI Healthcare*, 187 Cal. App. 4th at 779). The court could not "endorse [the appellant's] interpretation because California courts have carefully distinguished 'intangible,' 'incorporeal,' and 'economic' losses from 'physical' ones." *Id.* at *5 (quoting *MRI Healthcare*, 187 Cal. App. 4th at 779).[5]

Shortly after the Ninth Circuit issued its ruling in *Mudpie*, the California Court of Appeal issued its first opinion on this subject, holding that an insured's inability to use property for its intended purpose during COVID-19 did not constitute a "physical loss." *See The Inns by the Sea v. California Mut. Ins. Co.*, ___ Cal. App. 5th ___, No. D079036, 2021 WL 5298480, at *9 (Cal. Ct. App. Nov. 15, 2021). In that case, the insured alleged that it was unable to operate its hotel business following a government order prohibiting "non-essential operations" during the outset of the pandemic. *Id.* at *2. The Court of Appeal held that the

---

[5] Every federal appellate court to have addressed this issue has held the same. *See 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, ___ F.4th ___, 2021 WL 6109961 (2d Cir. Dec. 27, 2021)*; Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, ___ F.4th ___, 2021 WL 6048858, at *4 (10th Cir. Dec. 21, 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co*., 20 F.4th 327, 333 (7th Cir. 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.,* 15 F.4th 398, 402 (6th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021).

MOTION FOR JUDGMENT ON THE PLEADINGS

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

suspension of a business within a property, by itself, does not constitute a physical loss because there was no physical alteration of the property. *Id.* at *9. The Court of Appeal put it succinctly: "'The property did not change. The world around it did. And for the property to be useable again, no repair or change can be made to the property—the world must change." *Id.* (quoting *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, 522 F.Supp.3d 1216, 1222 (S.D. Fla. 2021)).

Beyond the binding precedents above, California federal courts have also already been called to address this issue in the context of insurance policy wording identical to the policy language at issue in this case. *See MGA Ent., Inc. v. Affiliated FM Ins. Co.*, No. 2:20-cv-10499-MWF, 2021 WL 2840456, at *3 (C.D. Cal. July 2, 2021); *Islands Rests., LP v. Affiliated FM Ins. Co.*, No. 3:20-CV-02013-H-JLB, 2021 WL 1238872 (S.D. Cal. Apr. 2, 2021) (Huff, J.); *Out West Rest. Grp., Inc. v. Affiliated FM Ins. Co.*, No. 20-CV-06786-TSH, 2021 WL 1056627 (N.D. Cal. Mar. 19, 2021) (Hixon, M.J.).

In *Islands Restaurants*, District Judge Huff found that the "[AFM] Policy's 'physical loss or damage' requirement is not ambiguous." 2021 WL 1238872, at *4. The District Court relied on both the *MRI Healthcare* line of authority discussed above, and also noted that "[i]nsurance policies commonly contain physical loss or damage coverage triggers." *Id.* (citing *Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 38 (2018); *MRI Healthcare*, 187 Cal. App. 4th at 779; Croskey, et al., CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION ¶ 6:276 (The Rutter Group, Aug. 2020 update)). "If a policy term has been 'judicially construed' in a 'sufficiently analogous context,' that term is 'not ambiguous.'" *Id.* (quoting *McMillin Homes Constr., Inc. v. Nat'l. Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1052 (2019)). Because the "direct physical loss or damage" requirement was unambiguous, the District Court ruled that an allegation of government orders suspending certain commercial activities was not enough to plausibly allege "physical loss or damage." *Id.* at *5. The District Court then entered judgment on

the pleadings. *Id.* at *6.

The result was the same in the *Out West* case, wherein the District Court noted that "[t]he overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage. These decisions have reasoned that the virus fails to cause physical alteration of property because temporary loss of use of property (if any) during a pandemic and while government orders are in effect does not qualify as physical loss or damage." 2021 WL 1056627, at *4. Thus, the District Court held that the "[p]laintiffs have not plausibly alleged 'direct physical loss of or damage to' property, as required by the Policy, and their alleged losses are not covered as a matter of law." *Id.* at *6.

Under these authorities, the Court should grant judgment in favor of AFM because CAA cannot, as a matter of law, allege it has suffered "physical loss or damage" caused by government shutdown orders during the pandemic.

### c. The coronavirus itself does not cause physical loss or damage

CAA also alleges that it is "informed and believes" the coronavirus itself may have been on its insured properties. (Compl. ¶¶ 3 and 100.) This also fails to state a legally cognizable claim.

California's federal courts have repeatedly held that the presence (or suspected presence) of virus particles on surfaces and in the air circulating within property do not cause the type of physical alteration needed to meet California's definition of "physical loss or damage." *See BA LAX, LLC et al. v. Hartford Fire Ins. Co.*, 519 F. Supp. 3d 711, 715–16 (C.D. Cal. 2021) ("[N]umerous courts have now held that neither the presence of COVID-19 in society nor government restrictions can by themselves constitute direct physical loss or direct physical damage under California law."); *Tralom, Inc. v. Beazley USA Servs., Inc.*, Case No. 2:20-cv-08344-JFW, 2020 WL 8620224, at *4–6 (C.D. Cal. Dec. 29, 2020)

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3

(holding that neither governmental orders restricting the use of property nor the presence of the virus or of individuals infected by the virus constitute physical loss or damage to property); *Protégé Rest. Partners LLC v. Sentinel Ins. Co.,* 517 F. Supp. 3d 981, 988 (N.D. Cal. 2021) ("Even if Plaintiff had known of a specific instance of COVID-19 particles inside of its business, evidence of such would still not qualify as a 'physical change' to the property."); *Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*, 517 F. Supp. 3d 1096, 1105–06 (S.D. Cal. 2021) ("Moreover, the Court does not find that the presence of COVID-19 qualifies as physical damage to property because the virus harms human beings, not property. . . . Consequently, the Court finds that allegations regarding the virus being present on and damaging Plaintiffs' property do not support a claim for insurance coverage."); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, 514 F. Supp. 3d 1217, 1225 (S.D. Cal. 2021) ("Critically, too, the Court is aware of no authority wherein a court applying California law has held that the mere presence of COVID-19 in or on one's business premises is sufficient to constitute physical loss or damage."); *Another Planet Ent., LLC v. Vigilant Ins. Co.*, No. 20-CV-07476-VC, 2021 WL 774141, at *1 (N.D. Cal. Feb. 25, 2021) ("Another Planet's facilities did not shut down because of the virus's presence on facility surfaces. Rather, those facilities shut in response to the closure orders …. Therefore, the company's losses were not caused by 'direct physical loss or damage' to its facilities."); *Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20-CV-1195 TWR (WVG), 2021 WL 1112710, at *3 (S.D. Cal. Mar. 17, 2021) ("The presence of COVID-19 on surfaces does not 'physically alter' the property …. Without evidence of a 'distinct, demonstrable, physical alteration,' Plaintiff does not have a valid claim.").

To avoid this avalanche of precedent, CAA alleges that the Policy words "loss" and "damage" must be treated as having distinct meanings in order to give effect to both of them. (Compl. ¶ 64.) The California Court of Appeal addressed this argument directly in *Inns by the Sea*, stating: "although the dictionary

MOTION FOR JUDGMENT ON THE PLEADINGS

definition of 'loss' could encompass the mere loss of use of real property, the surrounding context of the word 'loss' in the Policy unambiguously indicates that 'direct physical loss of' property cannot reasonably be interpreted to have that meaning."  *See Inns by the Sea*, 2021 WL 5298480, at *10 n. 18.  The distinction between "loss" and "damage" has also been addressed by this Court. Before the pandemic, in *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, this Court concluded that giving separate effect to "loss" and "damage" in the phrase, "direct physical loss or damage," could be read, in particular circumstances, as requiring "the permanent dispossession of something." 17-cv-04908-AB, 2018 WL 3829767, at *4 (C.D. Cal. 2018). But more recently, this Court held that the distinction between "loss" and "damage" is of no consequence in the context of COVID-19 government orders. *See Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1056 (C.D. Cal. 2020); *see also Mudpie*, 15 F. 4th at 891 n.5 (observing that *Total Intermodal* is not inconsistent with the Ninth Circuit's ruling that COVID-19 does not cause physical loss or damage).

CAA's claim also fails because CAA's complaint concedes its losses were caused by government orders, not the actual presence of the virus on any insured property.  Indeed, CAA admits it can only allege on information and belief that there was a virus present on its property. (Compl. ¶ 3.) Beyond a boilerplate allegation, often repeated, that the presumed presence of the virus somehow caused damage, CAA offers no concrete allegations to that effect. It does not allege any specific instance of property damage at all. Notably, CAA is not seeking damages related to the repair or replacement of property. Furthermore, CAA tacitly concedes that its inability to use property was the result of government orders, not a specific outbreak of COVID-19 at its property.

In this regard, CAA's complaint is virtually identical to the allegations considered by the California Court of Appeal in *Inns by the Sea*.  There, like CAA,

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3

the insured alleged both that it had been forced to close by government orders and that it had virus on its insured property.  The Court of Appeal noted that the plaintiff had not alleged that the government orders were in response to a specific outbreak at the plaintiff's property. Instead, the orders were issued "because the COVID-19 virus was present throughout San Mateo and Monterey Counties, not because of any particular presence of the virus on Inns' premises."  2021 WL 5298480, at *8. In addition, the Court of Appeal noted the plaintiff had failed to allege that the presence of the virus on the insured's property was the proximate cause of its losses: "Inns alleges that it ceased operations 'as a direct and proximate result of the Closure Orders.' It does not make the proximate cause allegation based on the particular presence of the virus on its premises." *Id.*

> Indeed, the lack of causal connection between the alleged physical presence of the virus on Inns' premises and the suspension of Inns' operations can be best understood by considering what would have taken place if Inns had thoroughly sterilized its premises to remove any trace of the virus after the Orders were issued. In that case, Inns would still have continued to incur a suspension of operations because the Orders would still have been in effect and the normal functioning of society still would have been curtailed.

*Id.* at *9.

As in *Inns by the Sea*, CAA does not allege that it suffered any losses that were directly due to the actual presence of the virus on insured property.  Instead, it alleges that its business was interrupted by government orders issued in the United States and the United Kingdom that were intended to slow the spread of disease generally. (Compl. ¶ 4.) Therefore, even if the virus were present on CAA's property, CAA has failed to allege that its losses were the "direct result" of such presence. *See Inns by the Sea*, 2021 WL 5298480, at *8–9.

CAA's allegation that the virus itself can cause property damage is also inconsistent with the Period of Liability that the Policy establishes when there has been a covered Business Interruption.  The Policy states that: "The Period of

17

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61887435.3

Liability for Business Interruption Coverage" begins at "the time of physical loss or damage of the typed insured" and ends when "[t]he lost or damaged property could be repaired or replaced and made ready for production or business operations or services ….". (Policy, ECF No. 1-1 at 248.)

This language is similar to the policy language addressed by the Court of Appeal in Inns by the Sea, which held: "The Policy's focus on repairing, rebuilding or replacing property (or moving entirely to a new location) is significant because it implies that the 'loss' or 'damage' that gives rise to Business Income coverage has a physical nature that can be physically fixed …." *Inns by the Sea*, 2021 WL 5298480, at *11. The presence of such language in Plaintiff's Policy confirms that "physical loss or damage" includes only injury that can be addressed through rebuilding, repair, or replacement—in other words, only injury that is physical. "To interpret the Policy to provide coverage absent physical damage would render the 'period of restoration' clause superfluous." *Mudpie, Inc.*, 15 F.4th at 892; *see also Palmdale Estates, Inc. v. Blackboard Ins. Co.*, 510 F. Supp. 3d 874, 877 (N.D. Cal. 2021) (the "repaired, rebuilt, or replaced [language] . . . also shows that the damage covered by the policy is physical and that [the insured] . . . is not entitled to Business Income coverage"); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1238 (C.D. Cal. 2020) ("'[D]irect physical loss of or damage to property' . . . plainly requires, at minimum, that the loss or damage be physical in nature. Indeed, the Policy contemplates a 'period of restoration' after such loss or damage during which property is 'repaired, rebuilt, or replaced.'").

No amount of rebuilding, repair, or replacement will address the losses CAA alleges because CAA did not suffer any physical loss or damage. Thus, CAA cannot plausibly allege it suffered the type of "physical loss or damage" required to invoke coverage under any of the provisions of its Policy.

MOTION FOR JUDGMENT ON THE PLEADINGS

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2.    CAA's loss is not "of the type insured"

CAA's failure to plausibly allege that its losses are the "direct result of physical loss or damage" is alone dispositive. But, even if CAA had a physical loss, which it did not, it must still be "of the type insured." CAA's Policy contains two unambiguous exclusions that prevent CAA from claiming governmental orders suspending certain commercial activities caused losses that were "of the type insured": (a) the Contamination Exclusion and(b) the Loss of Use Exclusion.

### a.    The Contamination Exclusion bars CAA's claims

The Policy's Contamination Exclusion excludes losses based on the inability to use property due to a virus. Here, CAA expressly alleges that the virus that causes COVID-19 was on its property causing damage.  (Compl. ¶ 3.)  However, the Policy defines "contamination" to mean "any condition of property due to the actual or suspected presence of any . . . virus, disease causing or illness causing agent . . . ." (ECF No. 1-1 at 267.) In addition, the Policy specifically excludes coverage for "contamination, and any cost due to contamination including the inability to use or occupy property." (ECF No. 1-1 at 230.) Reading the definition of "contamination" together with Contamination Exclusion, the Policy specifically excludes "the inability to use or occupy property" when that condition is "due to the actual or suspected presence of any . . . virus."

In other words, even if a virus could cause damage to a property, such a loss would be expressly excluded by the Policy's Contamination Exclusion. Numerous courts, including the Ninth Circuit, have found such exclusions to be enforceable. *See Mudpie*, 15 F. 4th at 893; *Mark's Engine Co.*, 492 F. Supp. 3d at 1057; *see also Phan v. Nationwide Gen. Ins. Co.*, Case No. CV 20-7616-MWF (JPRx), 2021 WL 609845, at *3 (C.D. Cal. Feb. 1, 2021) ("Because Plaintiff's loss arises from the coronavirus pandemic and resulting Public Orders, the Virus Exclusion applies on its face."); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d 848, 852–53 (C.D. Cal. Oct. 19, 2020) ("The Virus Exclusion Provision, which

MOTION FOR JUDGMENT ON THE PLEADINGS

explicitly applies to civil authority coverage, also explicitly excludes loss or damage resulting from a virus. . . . Thus, civil authority coverage is prevented by the virus exclusion.").

Indeed, courts interpreting the exact same Contamination Exclusion found in the Policy in this case have held that it is both enforceable and precludes any claims relating to the presence of a virus on property. *See Cordish Companies, Inc. v. Affiliated FM Ins. Co.*, __ F. Supp. 3d ___, No. CV ELH-20-2419, 2021 WL 5448740, at *20 (D. Md. Nov. 22, 2021) ("exclusion can only be read as barring plaintiff's claims"); *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, No. 20-CV-1470, 2021 WL 4260785, at *4 (D. Colo. Sept. 17, 2021) ("under the plain language of the Policy, the Contamination Exclusion precludes Plaintiff's coverage"); *Zebra Techs. Corp. v. Factory Mut. Ins. Co.*, No. 20-CV-05147, 2021 WL 4459532, at *4 (N.D. Ill. Sept. 29, 2021) ("Contamination Exclusion precludes Plaintiff's recovery"); *Mashantucket Pequot Tribal Nation v. Factory Mut. Ins. Co.*, No. X07HHDCV216140378S, 2021 WL 4477089, at *1 (Conn. Super. Ct. Aug. 18, 2021) ("policy language is plain" and "[a]fter reading it, any reasonable person would have to conclude that a virus is a contamination and contamination isn't covered"); *Shakopee Mdewakanton Sioux Comm. v. Factory Mut. Ins. Co.*, C.A. No. 70-CV-21-6480, at 15 (Minn. Dist. Ct. Dec. 29, 2021) ("separate and independent basis for dismissal . . . [is the] unambiguous exclusion for viruses and disease-causing agents"); *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, 2021 WL 1904739, at *4 (D.N.J. May 12, 2021).

Any claims by CAA relating to the presence of the virus on its property are barred by the Contamination Exclusion.

### b.    The Loss of Use Exclusion prevents CAA's claims

Finally, and independently, CAA's Policy also unambiguously excludes "loss of market or loss of use." (Policy, ECF No. 1-1 at 229.) Therefore, CAA cannot claim that a temporary restriction on activities at a facility—a claim for "loss of

MOTION FOR JUDGMENT ON THE PLEADINGS

use"—is "of the type insured," as required for the business interruption coverages under the Policy. *See Sky Flowers*, 2021 WL 1164473, at *3 (noting that claims based on restrictions under government orders allege "loss of use of the property"); *see also Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1007 (7th Cir. 2021); *WM Bang LLC v. Travelers Cas. Ins. Co.*, ___ F.Supp.3d ___, 2021 WL 4150844, at *5 (S.D.N.Y. Sept. 13, 2021) (the "loss of use" exclusion is "an additional basis to dismiss COVID-19 related insurance cases").

As the Seventh Circuit recently explained in *Bradley Hotel*, the Loss of Use Exclusion "indicates that a mere loss of use cannot be the cause of a policyholder's losses," and, where a plaintiff "alleges that it suffered business income losses and that the cause of those losses was an inability to use the [property] as it normally would," the exclusion applies because "that is exactly what [the insured] seeks." *See* 19 F.4th at 1007. Indeed, the Circuit Court expressly rejected the argument that an alleged presence of COVID-19 would defeat application of the exclusion, holding that where the insured's:

> theory is that there were two distinct causes of loss—the closure orders and the coronavirus—and that both contributed to the loss of use of the premises. That argument is unconvincing. First, it defies credulity to see the closure orders and the virus as two different causes" and "[e]ven if these were two different causes . . . [the insured] still would not be able to establish that either one is a covered cause.

*Id.*

Like the Seventh Circuit, a number of other courts have reached the same conclusion, including courts applying California law. *See, e.g., Selane Prods., Inc. v. Cont'l Cas. Co.*, ___ F.Supp.3d ___, 2020 WL 7253378, at *6 (C.D. Cal. Nov. 24, 2020) (no coverage where policy expressly excluded "loss of use") (applying California law); *Biltrite Furniture, Inc. v. Ohio Sec. Ins. Co.*, 2021 WL 3056191, at *5 (E.D. Wis. July 20, 2021) (finding identical "loss of use" exclusion barred claim for "loss of use and functionality" since any alleged expenses "still result from the

MOTION FOR JUDGMENT ON THE PLEADINGS

loss of use—rather than any physical loss or damage"); *Whiskey River on Vintage, Inc. v. Illinois Cas. Co.*, 503 F. Supp. 3d 884, 907 (S.D. Iowa 2020) ("Consequential Losses provision unambiguously states that Defendant will not pay for loss or damage resulting from a loss of use.").

Here, CAA's alleged losses stem entirely from the suspension of operations at its facilities and the facilities "within CAA's 'supply chain'" pursuant to government orders. (Compl. ¶¶ 3–5.) This claim directly implicates the Loss of Use Exclusion. As quoted in the complaint, CAA's pre-suit correspondence with AFM conceded that it was seeking recovery for a laundry list of business interruption losses stemming from the temporary inability to use property as a result of government orders. (*See* Compl. ¶ 91.) While CAA creatively alleges "loss of use" by trying to reframe it into a variety of business interruption coverages, each allegation is some form of a "loss of use" untethered to any form of physical loss or damage to property. Therefore, CAA's alleged losses are not "of the type insured," as required by the Policy, and the Policy's Loss of Use Exclusion bars coverage.

## IV.   CAA Fails to State a Claim for Bad Faith

CAA also states a claim for breach of the implied covenant of good faith and fair dealing. The implied covenant is "circumscribed by the purposes and express terms of the contract." *Hicks v. E.T. Legg & Assocs.*, 89 Cal. App. 4th 496, 509 (2001); *see also Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-350 (2000). "Under California law, a breach of the implied covenant of good faith and fair dealing in the insurance context has two elements: '(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause.'" *Mudpie*, 487 F. Supp. 3d at 844 (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)). Because CAA has failed to plausibly allege coverage, as a matter of law, no benefits were unreasonably withheld, and the threshold requirement for a bad faith claim is unmet. *See id.; see also Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 35 (1995)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR JUDGMENT ON THE PLEADINGS

1  (plaintiff cannot maintain bad faith claim unless policy benefits were due).

2  Accordingly, this claim must also be dismissed.

3  **V.     Conclusion**

4        The complaint should be dismissed with prejudice and judgment should be

5  entered against CAA in favor of AFM.

6  DATED: January 12, 2022              **ROBINS KAPLAN LLP**

7

8                                        By: /s/ Amy M. Churan
                                            Amy M. Churan

9

10                                       **ATTORNEYS FOR DEFENDANT
                                         AFFILIATED FM INSURANCE**

11                                       **COMPANY**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR JUDGMENT ON THE PLEADINGS

61887435.3