**BOREN, OSHER & LUFTMAN, LLP**
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
222 N. Pacific Coast Highway, Ste. 2222
El Segundo, CA 90245
Telephone: (310) 322-2021

Attorney for Plaintiffs
CREATIVE ARTISTS AGENCY, LLC
and CAA HOLDINGS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE ARTISTS AGENCY, LLC, a Delaware limited liability company; and CAA HOLDINGS, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> AFFILIATED FM INSURANCE COMPANY, a Rhode Island limited liability company; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:21-cv-08314-AB-GJS <br><br> Judge:  Hon. Andre Birotte Jr. <br> Courtroom:  7B <br><br><br> **PLAINTIFFS CREATIVE ARTISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT AFFILIATED FM INSURANCE COMPANY'S MOTON FOR JUDGMENT ON THE PLEADINGS** <br><br> Action Filed:  September 10, 2021 |

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

    A. CAA adequately has alleged that its losses are the direct result of "physical loss or damage" ..........................................................................................................1

    B. The "Contamination Exclusion" does not bar coverage for CAA's business interruption losses ................................................................................................3

    C. AFM's interpretation of the "Loss of Use Exclusion" would render the Policies' coverages for business interruption losses illusory .............................................4

II.     STATEMENT OF FACTS .............................................................................5

    A. CAA's Business ..............................................................................................5

    B. The Policies Issued By AFM. ..........................................................................5

    C. The COVID-19 Pandemic .................................................................................6

    D. Physical Loss And Damage To CAA's Premises And The Premises Of Its Dependent Businesses. ......................................................................................6

    E. AFM's Bad Faith Denial Of Coverage .............................................................8

III.    LEGAL STANDARD ....................................................................................9

IV.    ARGUMENT ...................................................................................................9

    A. Principles of Insurance Contract Interpretation ................................................9

    B. CAA Adequately Has Alleged "Physical Loss Or Damage" As That Language Is Used In The Policies And Interpreted Under California Law ...............................11

        1. The Meaning of the Undefined Term "Physical Loss or Damage" Is Not Settled and Is at Best Ambiguous. .............................................................11

        2. CAA Adequately Has Alleged Physical Damage to Property. ....................12

        3. AFM's Reliance on the "Period of Restoration" Language in the Policies Is Not Persuasive ..........................................................................................16

1

4.  CAA Adequately Has Alleged Physical Loss. ...........................................17

C.  CAA Is Entitled To Coverage Under California's Mitigation Doctrine. ..............19

D.  The Contamination Exclusion In The Policies Does Not Bar Coverage For CAA's Pandemic-Related Losses. ........................................................................20

E.  The Loss Of Use Exclusion In The Policies Does Not Bar Coverage For CAA's Coverage Claims. ....................................................................................22

F.  Because CAA Has Plead A Viable Breach Of Contract Claim, It Would Be Error To Grant The Instant Motion As To CAA's Bad Faith Claim. ..............................24

G.  CAA Is Entitled To Develop Extrinsic Evidence. ....................................24

**V.    CONCLUSION** ...........................................................................**25**

2

# TABLE OF AUTHORITIES

**CASES**

**Federal Cases**

*Another Planet Ent., LLC v. Vigilant Ins. Co.*
    2021 WL 774141 at *2 (N.D. Cal. Feb. 25, 2021) ...................................16

*Ashland Hosp. Corp. v. Affiliated FM Insurance Co.*
    2013 WL 4400516 at *1 (E.D. Ky.) ........................................................23

*Bailer v. Erie Ins. Exch.*
    (Md. 1997) 687 A.2d 1375 ......................................................................23

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*
    (7th Cir. 2021) 19 F.4th 1002 ................................................................23

*Chavez v. United States*,
    (9th Cir. 2012) 683 F.3d 1102, 1108 ........................................................9

*Cinemark Holdings v. Factory Mutual Ins. Co.*
    (E.D. Tex. 2021) 500 F.Supp.3d 565 ......................................................13

*Elegant Massage, LLC v. State Farm Mutual Auto Ins. Co.*
    (E.D. Va. 2020) ........................................................................................17

*Essex v. BloomSouth Flooring Corp.*
    (1st Cir. 2009) 562 F.3d 399 ....................................................................18

*Factory Mutual Ins. Co. v. Federal Ins. Co.*
    (N.M. Dist.) Case No. 1:17-cv-00760-GJF-LF .........................4, 17, 18

*Fajardo v. County of L.A.*
    (9th Cir. 1999) 179 F.3d 698 .....................................................................9

*Fleming v. Pickard*
    (9th Cir. 2009) 581 F.3d 922 .....................................................................9

*General Conf. Corp. v. Seventh-Day Adventist Cong. Church*
    (9th Cir. 1989) 887 F.2nd 228 ...................................................................9

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*

2014 WL 6675934 at *6 (D.C. N.J. Nov. 15, 2014) ........................................ 15, 18

*Harris v. County of Orange*

    (9th Cir. 2012) 682 F.3d 1126 ........................................................................ 9

*In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*

    (N.D. Ill. 2021) 521 F.Supp.3d 729 ............................................................... 17

*Live Nation Ent., Inc. v. Factory Mutual Ins. Co.,*

    Case No. 2:21-cv-00862-JAK-KS, Feb. 3, 2022 Order denying Partial MJOP at
    pp. 9-10 ......................................................................................................... 4, 20

*Madera Group, LLC v. Mitsui Sumitomo Ins*

    2021 WL 2658498 at *9 (C.D. Cal. June 25, 2021 ......................................... 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*

    (9th Cir. 2008) 519 F.3d 1025 ..................................................................... 5, 24

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*

    2021 WL 4486509 (9th Cir. Oct. 1, 2021) ........................................... 2, 14, 16

*N. State Deli, LKLC v. Cincinnati Ins. Co.,*

    2020 WL 6281507 at *3 (N.J. Super. Ct. Oct. 9, 2020 .................................. 18

*Pez Seafood DTLA, LLC v. Travelers Indem. Co.*

    (C.D. Cal. 2021) 514 F.Supp.3d 1197 .......................................................... 13

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*

    (3rd Cir. 2002) 311 F.3d 226 ......................................................................... 18

*Ram v. Infinity Select Ins.*

    (N.C. Cal. 2011) 807 F.Supp.2d 843 ............................................................ 24

*Studio 417, Inc. v. Cincinnati Ins. Co.*

    (W.D. Mo. 2020) 478 F.Supp.3d 794 ........................................................... 17

*Thor Equities, LLC v. Factory Mutual Ins. Co.*

    (S.D.N.Y. 2021) 531 F.Supp.3d 802, .......................................................... 4, 22

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co.*

    2018 WL 3829767 at *3 (C.D. Cal.) ............................................................. 12

TABLE OF AUTHORITIES

*Ungareran v. CNA*,

    2021 WL 1164836 (Pa. Ct. Com. Pleas) ........................................... 16, 17

*Unmasked Management, Inc. v. Century-National Ins. Co.*

    (S.D. Cal. 2021 512 F. Sup. 1217 ...................................................... 13


**California State Cases**

*Aragon-Haas v. Family Sec. Ins. Servs., Inc.*

    (1991) 231 Cal. App. 3d 232, 238–41 ................................................ 25

*Bank of the West v. Superior Court*

    (1992) 2 Cal.4th 1254 ......................................................................... 9

*Continental Ins. Co. v. Superior Court*

    (1995) 37 Cal.App.4th 69 ................................................................. 10

*Dore v. Arnold Worldwide, Inc.*,

    (2006) 39 Cal. 4th 384, 391 .............................................................. 24

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,

    (2004) 32 Cal. 4th 465, 470–71 ........................................................ 10

*Globe Indem. Co. v. State*,

    (1974) 43 Cal. App. 3d 745, 748 ...................................................... 20

*Haynes v. Farmers Ins., Exch.*

    (2004) 32 Cal. 4th 1198 ................................................................... 16

*Inns by the Sea v. California Mutual Ins. Co.*

    (2022) 71 Cal.App.5th 688 ........................................................... 2, 12

*MacKinnon v. Truck Ins. Exch*

    (2003) 31 Cal. 4th 635 .................................................................. 9, 22

*Martin Murietta Corp. v. Ins. Co. of North America*

    (1995) 40 Cal.App.4th 1113 ............................................................ 10

*Mirpad, LLC v. Cal. Ins. Guar. Ass'n*

    (2005) 132 Cal.4th 1058 .................................................................. 12

4

TABLE OF AUTHORITIES

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*

(1968) 69 Cal. 2d 33, 39–40 ...................................................................24

*S. Cal. Edison Co. v. Harbor Ins. Co*

(1978) 83 Cal. App. 3d 747, 757 ...........................................................20

*S. Cal. Pizza Co., LLC, v. Certain Underwriters*

(2019) 40 Cal.App.5th 140 ....................................................................24

*Safeco Ins. Co. of America v. Robert S.*

(2001) 26 Cal.4th 758 ...........................................................................10

*Safeco Ins. Co. v. Robert S.*

(2001) 26 Cal.4th 758 .............................................................................3

*Strubble v. United Servs. Auto. Assn*

(1973) 35 Cal. App. 3d 498, 504 ...........................................................10

*The Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co*

(2011) 198 Cal. App. 4th 522 ................................................................10

*Travelers Cas. & Sur. Co. v. Superior Court*,

(1998) 63 Cal. App. 4th 1440, 1454–1455 ............................................10

*Vardanyan v. AMCO Ins. Co.*

(2015) 243 Cal. App. 4th 779 ................................................................10

*Watts Indus., Inc. v. Zurich Am. Ins. Co.*

(2004) 121 Cal. App. 4th 1029 ..............................................................20

*White v. Western Title Ins. Co.*

(1985) 40 Cal. 3d 870, 881 ....................................................................10

*Young's Mkt. Co. v. Am. Home Assur. Co.*

(1971) 4 Cal.3d 309 ...............................................................................19

**Colorado State Cases**

*University of Colorado v. Factory Mutual Ins. Co*

Case No. 2021CV30206, Jan. 26, 2022 Order denying Partial MJOP at pp.6-7 3, 21

5

*Western Fire Ins. Co. v. First Presbyterian Church*
(Colo. 1968) 437 P.2d 52..................................................................15, 18

**Statutes**

Cal. Ins. Code § 531(b) .........................................................................19

Fed. R. Civ. P. 12(c)...............................................................................9

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Affiliated FM Insurance Company (hereafter, "AFM") advances three arguments for why this Court should enter judgment on the pleadings, all of which lack merit and none of which justify AFM's request to dispose of this action at the pleadings stage. First, AFM suggests there can never be coverage under the broad "all risks" property insurance policies that it issued to Plaintiffs Creative Artists Agency, LLC and CAA Holdings, LLC (collectively, "CAA") because CAA's losses were not the "direct result of physical loss or damage". Second, AFM argues that the "contamination exclusion" bars coverage for losses resulting from SARS-CoV-2. Third, AFM argues that the "loss of use exclusion" in its policies bars recovery for CAA's pandemic-related losses despite that fact that its position would completely eviscerate the business interruption coverages afforded by the AFM policies. As demonstrated herein, each of these arguments must be rejected:

## A. CAA adequately has alleged that its losses are the direct result of "physical loss or damage":

AFM's primary argument is that CAA cannot "plausibly allege that its losses were the 'direct result of physical loss or damage'" because neither "the physical presence of COVID-19" nor the civil authority orders constitute 'physical loss or damage'". (Motion at 10:19-11:4.) The problem with AFM's argument is that CAA did not claim that the mere presence of the virus or the issuance of the closure orders caused physical loss or damage. Instead—unlike the insureds in the cases cited by AFM—CAA included a detailed explanation of how the virus, which is present in CAA's premises and those of its dependent businesses, infiltrates and attaches to property in a manner that creates a distinct and demonstrable alteration to the property. (Compl., ¶¶ 3, 26-34, 66, 81, 100.)

AFM argues that published decisions in the 9th Circuit (*Mudpie*) and the California Court of Appeal (*Inns by the Sea*) somehow slam the door shut on pandemic-related coverage claims in California. (*See, e.g.*, Motion at 1.) Not so. In fact, these decisions— and other decisions from the Central District—actually support CAA's coverage position as they make clear that where—as here—an insured alleges that SARS-CoV-2 was present

1

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

on and in the insured premises and physically altered the airspace and the surfaces to which it attaches, there **can** be coverage under "all risk" property policies.[1]

The *Mudpie* and *Inns by the Sea* courts did **not** suggest that the virus can *never* cause "physical loss or damage" of the type necessary to trigger coverage under "all risks" policy language. Instead, these courts concluded that the insureds in those cases—*unlike* CAA in this case—did not adequately allege "physical loss or damage" and/or their claims were premised entirely on the civil authority orders themselves causing "physical loss or damage". To be clear, CAA is not—as AFM contends—alleging that the civil authority orders caused "physical loss or damage". Rather, the Complaint includes specific allegations—that the virus was present at and in the insured premises (and dependent premises) and that the virus—not the civil authority orders—caused distinct, demonstrable, physical alteration to those premises.

In addition, numerous courts have concluded that the inability to use property as a result of noxious or illness-causing substances, *e.g.*, smoke, asbestos fibers, ammonia, noxious odors, constitutes "physical loss" because the presence of these substances prevents the insured from using the property for its intended purpose. The same argument applies here, where CAA contends that SARS-CoV-2 rendered its premises (and the premises of its dependent businesses) unfit for their intended use, thereby resulting in business interruption losses. (*See infra*, Section IV.B.4.)

---

[1] *See Mudpie v. Inc. v. Travelers Cas. Ins. Co. of Am.* (9th Cir. 2021) 15 F.4th 885 (affirming lower court ruling that "[h]ad Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different. SARS-CoV-2—the coronavirus responsible for the COVID-19 pandemic, which is transmitted either through respiratory droplets or through aerosols which can remain suspended in the air for prolonged periods of time—is no less a "physical force" than the "accumulation of gasoline"); *Inns by the Sea v. California Mutual Ins. Co.* (2022) 71 Cal.App.5th 688, 703 ("[I]t could be possible…that an invisible airborne agent would cause a policyholder to suspend operations because of direct physical damage to property.").

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Significantly, AFM's sister company—Factory Mutual Ins. Co.[2]—previously argued in a case against another insurer that loss of functionality **does** constitute "physical loss or damage". (*See* Request for Judicial Notice ("RJN"), Ex. "3" (*Factory Mutual Ins. Co. v. Federal Ins. Co.*, Case No. 1:17-cv-00760-GJF-LF (N.M. Dist.) (involving loss of use due to the presence of mold). Further, in that case, Factory Mutual **conceded** that the undefined language "physical loss or damage" was "at best … **susceptible of more than one reasonable interpretation and is therefore ambiguous**". (*Id.* at 3 n.1).) CAA agrees that this language unclear, and that to the extent it is ambiguous, it must be construed in favor of coverage. (*See Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 765.)

CAA further contends that that the losses it sustained as a result of the necessary suspension of its business operations are recoverable as mitigation expenses. (Compl., ¶ 4.) More specifically, and as alleged in the Complaint, because the presence of SARS-CoV-2 in the CAA's premises causes distinct, demonstrable, and physical alteration to property, including to the surfaces to which it attaches and the airspace it occupies, CAA had an affirmative obligation to shut down operations. (Compl., ¶¶ 3, 98, 100.) Had CAA not suspended its operations pursuant to the closure orders, it would have sustained more covered property damage and/or would have been exposed to third-party claims that they contributed to the spread of the virus. AFM simply ignores CAA's well-plead allegations regarding mitigation. (*See infra*, Section IV.C.)

**B. The "Contamination Exclusion" does not bar coverage for CAA's business interruption losses:**

AFM's argument that the "contamination exclusion" bars coverage for losses resulting from SARS-CoV-2 is contrary to recent court decisions which have concluded that the plain language of the exclusion—and particularly the carve-out for certain

---

[2] Factory Mutual Insurance Company and Affiliated FM Insurance Company are both part of the FM Global Group family of insurance companies. *See* https://www.fmglobal.com/about-us/our-business/fm-global-group. Each company employs similar policy forms with similar policy wording.

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

contamination costs implicated in this action—does not foreclose business interruption losses. (*See* RJN, Ex. "1" (*Live Nation Ent., Inc. v. Factory Mutual Ins. Co.*, Case No. 2:21-cv-00862-JAK-KS, Feb. 3, 2022 Order denying Partial MJOP at pp. 9-10) ("Thus, on its face, the Contamination Exclusion does not exclude physical damage caused by COVID-19.")); RJN, Ex. "2" (*University of Colorado v. Factory Mutual Ins. Co.*, Case No. 2021CV30206, Jan. 26, 2022 Order denying Partial MJOP at pp.6-7 (finding that the Contamination Exclusion does not unambiguously foreclose coverage.")).) At best, AFM can argue that the courts are divided as to whether the language of the contamination exclusion found in AFM/Factory Mutual policies precludes pandemic-related losses. Thus, at this stage, the Court should conclude—as other courts have in recent decisions—that the contamination exclusion is ambiguous, such that judgment on the pleadings is not appropriate. (*See* RJN, Ex. "1" at p.10; *Thor Equities, LLC v. Factory Mutual Ins. Co.* (S.D.N.Y. 2021) 531 F.Supp.3d 802, 808.)

## C. AFM's interpretation of the "Loss of Use Exclusion" would render the Policies' coverages for business interruption losses illusory:

AFM's argument that the "loss of use exclusion" in its policies bars recovery for CAA's pandemic-related losses fails because that exclusion does not apply here. CAA adequately has alleged that the virus caused "physical loss or damage" to its premises and the premises of others in its supply chain, and that this damage resulted in business interruption losses. Thus, the loss of use exclusion does not apply. The result would be different if—as AFM suggests—CAA's claims were in fact "untethered to any form of physical loss or damage to property". This is not the case here. AFM's interpretation of the loss of use exclusion, whereby CAA would be precluded from recovering losses resulting from physical damage to property, must be rejected. (*See* RJN, Ex. "1" (Order on Partial MJOP at 10 ("The complaint sufficiently alleges that physical damage resulted from the actual presence of COVID-19 at Plaintiff's properties. Therefore, based on these allegations, the Loss of Use Exclusion would not preclude coverage for claims based on such alleged, physical damage".).)

Because CAA has alleged more than sufficient facts to establish covered losses, and because AFM has not established that either the contamination exclusion or loss of use exclusion bar coverage as a matter of law, the Court cannot summarily dismiss CAA's bad faith claim. (*See Manzarek v. St. Paul Fire & Marine Ins. Co.* (9th Cir. 2008) 519 F.3d 1025, 1034 (because district court erred in dismissing insured's breach of contract claim, "the district court also erred by summarily dismissing the claim for breach of the implied covenant of good faith and fair dealing").)

## II.   STATEMENT OF FACTS

### A. CAA's Business.

Creative Artists Agency, LLC is one of the world's leading entertainment and sports talent agencies and represents many of the most successful and innovative professionals working in sports, film, television, music, video games, theatre, and digital content. (Compl., ¶ 12.) A significant portion of CAA's business is based on live music performances, sporting events, and television and motion picture productions, which were significantly and negatively impacted as a result of the pandemic. (Compl., ¶ 101.)

### B. The Policies Issued By AFM.

AFM issued broad "all-risk" policies of insurance to CAA (collectively, the "Policies"), which cover property against "all risks of physical loss or damage" except for those risks not plainly, conspicuously, and expressly excluded. (Compl., ¶¶ 60-61.) The Policies cover a number of CAA locations throughout the United States (including in California and New York) and in the United Kingdom. (Compl., ¶¶ 54-55.) The Policies broadly provide coverage for "real property in which [CAA] has an insurable interest" and broadly cover "personal property", including property owned by CAA. (Compl., ¶ 62.) In addition to covering CAA's real and personal property, the Policies also provide coverage for CAA's "Business Interruption loss, as provided in the Business Interruption Coverage section". (Compl., ¶ 64.) The Policies enumerate sixteen (16) different "Business Interruption Coverage Extensions" that are applicable to the losses sustained by CAA including:   Communicable   disease—property   damage   coverage;   protection   and

preservation of property—property damage coverage, business interruption coverage, extra expense coverage, civil authority coverage, ingress/egress coverage, and supply chain coverage. (Compl., ¶¶ 66-81.)

### C. <u>The COVID-19 Pandemic.</u>

COVID is a disease caused by a virus known as SARS-CoV-2 and its variants. (Compl., ¶ 26.) In early 2020, COVID-19 began its spread throughout the world. On January 31, 2020, the World Health Organization ("WHO") declared a health emergency. (*Id.*, ¶ 26.) Shortly thereafter, on February 3, 2020, the United States also declared COVID-19 a health emergency. By March 2020, COVID-19 was a global pandemic. (*Id.*, ¶ 26.) Beginning in March 2020, and in response to the pandemic, civil authorities throughout the United States, the United Kingdom, and elsewhere began issuing "stay at home" and "shelter in place" quarantine orders and requiring the suspension of nonessential business operations and the closure of business (the "Closure Orders"). (Compl., ¶¶ 35, 37-45 (California closure orders), ¶¶ 46-48 (New York closure orders), ¶¶ 49-52 (United Kingdom closure orders).) The Closure Orders were issued due to the highly contagious nature of SARS-CoV-2 and the ways in which SARS-CoV-2 physically alters tangible property, including air, airspace, furniture, surfaces, and other personal property in and around buildings. (*Id.*, ¶ 35.)

### D. <u>Physical Loss And Damage To CAA's Premises And The Premises Of Its Dependent Businesses.</u>

Contrary to the arguments advanced by AFM in its moving papers—and unlike the insureds in the cases relied on by AFM—CAA repeatedly alleges in its Complaint that SARS-CoV-2 was present in its premises and the premises of others in CAA's supply chain and that the virus causes physical loss and damage to said premises, which triggered coverage under the Policies:

- "CAA is informed and believes, and thereon alleges, that SARS-CoV-2 was present at various times during the relevant AFM policy periods on and in its insured properties and the premises of others in CAA's "supply chain", and/or that would have been present had it not been for the closures of the properties to prevent the

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

further spread of SARSCoV-2 and thereby present threatened property damage covered under the policies issued by AFM." (Compl., ¶ 3.)

- "The 'actual presence' of COVID-19 at CAA's insured locations has caused physical damage to property at these locations … ." (Compl., ¶ 66.)

- "COVID-19, SARS-CoV-2, and the Civil Authority Orders have caused physical loss and damage of the type insured to property of the type insured at the premises of CAA's direct customers and direct contract service providers, and the direct and indirect suppliers, customers, and contract service provide4rs of CAA's direct customers and contract service providers." (Compl., ¶ 81.)

- "CAA is informed and believes, and on that basis alleges, that SARS-CoV-2 particles attached to and damaged CAA's insured premises as well as the premises upon which CAA depends to deliver and accept services and the surrounding vicinity." (Compl., ¶ 100.)

In addition to alleging the presence of COVID-19 and the resulting damage, the Complaint goes even further and includes detailed allegations regarding the manner in which the virus causes physical damage to the air in which it is found and the property to which it attaches. (Compl., ¶¶ 29-34.) More specifically, CAA alleges:

- "SARS-CoV-2 causes physical damage and physical property loss by physically permeating, attaching to, binding to, corrupting, destroying, distorting, and altering property, and by rendering it unusable, unfit for its intended function, dangerous, and/or unsafe. Specifically, when individuals carrying SARS-CoV-2 breathe, talk, sneeze, or yell, they expel aerosolized droplet nuclei that remain airborne and make the premises unsafe. This process alters the physical composition of air in and around buildings, rendering it dangerous to breathe. Like smoke, the presence of SARS-CoV-2 alters the air and airspace in which it is found and the property on which it lands. This physical change constitutes 'physical loss and damage'." (Compl., ¶ 32.)

- "When respiratory droplets expelled from infected individuals land on and adhere to surface and objects, they physically change the property by becoming a part of its surface. This physical alteration makes physical contact with those previously safe, inert surfaces unsafe. When SARS-CoV-2 attaches or binds to surfaces and objects, it converts those surfaces and objects to active fomites, which constitutes physical loss and damage." (Compl., ¶ 33.)

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- "The presence of SARS-CoV-2 on property causes physical loss and physical damage by requiring remedial measures to reduce or eliminate the presence of SARS-CoV-2, including extensive cleaning and disinfecting; installing, modifying, or replacing air filtration systems; remodeling and reconfiguring physical spaces; and other measures. But even frequent cleaning and new and expensive cleaning measures cannot completely eliminate the viral presence once SARS-CoV-2 adheres to property." (Compl., ¶ 34.)

- "Because SARS-CoV-2 causes a distinct, demonstrable, physical alteration to air, airspace, and other property, it constitutes "direct physical loss or damage" to property as that phrase is used in the AFM Policies. Additionally, the presence or potential presence of SARS-CoV-2 at, on, and in insured property prevents or impairs the use of the property, thus constituting "direct physical loss" to property, even if it did not constitute "damage" to property as that term is used in the AFM Policies." (Compl., ¶ 53.)

## E. **AFM's Bad Faith Denial Of Coverage.**

The Complaint alleges that prior to CAA's submission of its coverage claim, AFM—and its parent company FM Global—had adopted a predetermined, company-wide position on coverage for COVID-19 claims, and issued written guidelines, *i.e.*, the "talking points" memorandum, to all claims handlers to ensure they all reached the same conclusion for all COVID-19 claims, regardless of the facts and circumstances underlying any particular claim and without regard to any investigation. (Compl., ¶ 83.) The talking points memo instructs adjusters to only seek information that pertains to the Communicable Disease coverages, which are subject to miniscule sub-limits (i.e., $100,000). The talking points memo is designed to steer adjusters toward the miniscule communicable disease sub-limits and away from those provisions that actually provide extensive coverage for the business interruption losses sustained by CAA. By issuing a blanket directive to all claim personnel on what portions of every COVID-19 claim to accept and/or deny, the AFM "talking points" ensure that AFM claims personnel do not undertake any proper or independent investigation of the claim to arrive at an independent coverage determination. (*Id.*, ¶ 88.) Sure enough, when CAA provided AFM with notice of its pandemic-related losses, AFM, consistent with its predetermined company-wide "talking points", and without conducting

1  any investigation, immediately characterized the losses as a "communicable disease" loss
2  and denied coverage for CAA's business interruption losses. (Compl., ¶ 90, 93.)

3  ## III.  <u>LEGAL STANDARD</u>

4          Fed. R. Civ. P. 12(c) provides that, "[a]fter the pleadings are closed—but early
5  enough not to delay trial—a party may move for judgment on the pleadings." A motion for
6  judgment on the pleadings under Rule 12(c) parallels one brought under Rule 12(b)(6).
7  Thus, it challenges the legal sufficiency of the pleadings. (*See Chavez v. United States*, (9th
8  Cir. 2012) 683 F.3d 1102, 1108 .) "A judgment on the pleadings is properly granted when,
9  taking all the allegations in the non-moving party's pleadings as true, the moving party is
10 entitled to judgment as a matter of law." (*Fajardo v. County of L.A.* (9th Cir. 1999) 179
11 F.3d 698, 699.) The court must assume the truthfulness of the material facts alleged in the
12 complaint and all inferences reasonably drawn from these facts must be construed in favor
13 of the responding party. (*See Fleming v. Pickard* (9th Cir. 2009) 581 F.3d 922, 925.) A
14 defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact
15 which, if proved, would support recovery. (*General Conf. Corp. v. Seventh-Day Adventist*
16 *Cong. Church* (9th Cir. 1989) 887 F.2nd 228, 230.) Thus, a complaint should be dismissed
17 without leave to amend only if "the Court is satisfied that an amendment could not cure the
18 deficiency." (*Harris v. County of Orange* (9th Cir. 2012) 682 F.3d 1126, 1135.)

19 ## IV.  <u>ARGUMENT</u>

20 ### A.  <u>Principles of Insurance Contract Interpretation.</u>

21         "While insurance contracts have special features, they are still contracts to which the
22 ordinary rules of contractual interpretation apply." (*Bank of the West v. Superior Court*
23 (1992) 2 Cal.4th 1254, 1264. "'The fundamental rules of contract interpretation are based
24 on the premise that the interpretation of a contract must give effect to the 'mutual intention'
25 of the parties.'" *MacKinnon v. Truck Ins. Exch.*, (2003) 31 Cal. 4th 635, 647.) "'Such intent
26 is to be inferred, if possible, solely from the written provisions of the contract. ([Calif. Civil
27 Code] § 1639).'" *Id.* "[I]nsurance coverage is 'interpreted broadly so as to afford the
28 greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted

9

narrowly against the insurer.'" *MacKinnon*, 31 Cal. 4th at 648 (quoting *White v. Western Title Ins. Co.*, (1985) 40 Cal. 3d 870, 881; *Martin Murietta Corp. v. Ins. Co. of North America* (1995) 40 Cal.App.4th 1113, 1122 ("We generally interpret the coverage clauses of insurance policies broadly".).)

Where—as here—policy language "is capable of more than one reasonable construction", it is ambiguous. (*Continental Ins. Co. v. Superior Court* (1995) 37 Cal.App.4th 69, 82.) "[A]mbiguous terms are reserved in the insureds' favor, consistent with the insureds' reasonable expectations." (*Safeco Ins. Co. of America v. Robert S.* (2001) 26 Cal.4th 758, 765.) "[E]ven if [an] insurer's interpretation is considered reasonable, it would still not prevail, for in order to do so it would have to establish that its interpretation is the *only* reasonable one." (*MacKinnon*, 31 Cal.4th at 655.)

"Coverage language in an all-risk or open peril policy is *quite broad*, generally insuring against all losses not expressly excluded." (*The Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co.*, (2011) 198 Cal. App. 4th 522, 534 (citing *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, (2004) 32 Cal. 4th 465, 470–71 ) (emphasis in original).) "[I]n an action upon an all-risks policy ... (unlike a specific peril policy), the insured does not have to prove that the peril proximately causing his loss was covered by the policy. This is because the policy covers *all risks* save for those risks specifically excluded by the policy. The insurer, though, since it is denying liability upon the policy, must prove the policy's noncoverage of the insured's loss —that is, that the insured's loss was proximately caused by a peril specifically excluded from the coverage of the policy." (*Vardanyan v. AMCO Ins. Co.*, (2015) 243 Cal. App. 4th 779, 796–97 (quoting *Strubble v. United Servs. Auto. Assn.*, (1973) 35 Cal. App. 3d 498, 504) (alteration and emphasis in original).)

Under all-risks policies, "once the insured establishes basic coverage, the insurer bears the burden of proving the loss was caused by an excluded peril." (*Vardanyan*, *supra*, 243 Cal. App. 4th at 797 (quoting CACI Model Jury Instruction No. 2306); *see also Travelers Cas. & Sur. Co. v. Superior Court*, (1998) 63 Cal. App. 4th 1440, 1454–1455 (explaining that the *Strubble* court held that an insured who makes a claim under an all-

risks policy "has no burden of proof" because "there is a presumption of coverage, which the insurer has the burden to rebut").)

B. **CAA Adequately Has Alleged "Physical Loss Or Damage" As That Language Is Used In The Policies And Interpreted Under California Law.**

AFM argues there is no coverage for CAA's pandemic-related losses because CAA has not alleged that such losses were the "direct result of physical loss or damage". Notably, although insurance carriers—including AFM—could easily define the term "physical loss or damage" in their property policies, they have chosen not to do so, which has created significant problems for courts interpreting this and similar language.[3] In the absence of a definition, this language must be understood in accord with the plain meaning that a layperson would attach to it. (*Martin Marietta Corp.*, *Supra*, 40 Cal.App.4th at 1124.)

1. **The Meaning of the Undefined Term "Physical Loss or Damage" Is Not Settled and Is at Best Ambiguous.**

Contrary to AFM's position, the meaning of "physical loss or damage" is far from settled under California law. Significantly, AFM's sister company, Factory Mutual Insurance Company ("Factory Mutual"), has **conceded** in at least one prior action that the undefined term "physical loss or damage" is "at best … susceptible of more than one reasonable interpretation and is therefore ambiguous". (RJN, Ex. "3" at p.3 n.1.) CAA agrees with Factory Mutual that the phrase "physical loss or damage" is far from clear and is "at best" ambiguous (in which case it should be construed against AFM).

---

[3] "Carriers have utilized the phrase *direct physical loss* for over fifty (50) years and courts have begged carriers to define the phrase to avoid the precise issue before the Court now." *Cherokee Nation v. Lexington Ins. Co.*, 2021 WL 506271 at *3 (Okla. Dist. Ct. Jan. 28, 2021 (collecting cases). "Despite these pleas and the known confusion surrounding the phrase 'direct physical loss,' Defendant Insurers made no attempt to clarify or define that phrase … to avoid the [insured's] interpretation that losses such as the closure of a business in response to the Pandemic would be covered." *Id.*

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Moreover, AFM's suggestion that there is no distinction to be drawn between "loss" and "damage" is contrary to the generally accepted rule of contract interpretation that courts must construe policies to give effect to every word, when possible. (*Mirpad, LLC v. Cal. Ins. Guar. Ass'n* (2005) 132 Cal.4th 1058, 1072-73; *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co.*, 2018 WL 3829767 at *3 (C.D. Cal.) ("to interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause" and "contradicts insureds' reasonable expectations of coverage").)

As demonstrated below, the well-plead allegations in CAA's Complaint trigger coverage under the all-risk policies issued by AFM because CAA has alleged physical damage and physical loss as those terms have been interpreted by numerous state and federal courts in California, including the primary authorities relied on by AFM in the instant Motion, *i.e.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co.* 2021 WL 4486509 (9th Cir. Oct. 1, 2021) and *Inns by the Sea v. California Mutual Ins. Co.* (2022) 71 Cal.App.5th 688. Indeed, these cases make clear that an insured **can** trigger coverage for pandemic-related losses if the insured alleges—as CAA has done here—the presence of the virus and that the virus caused physical alteration to the airspace and property on which the virus attaches.

## 2. CAA Adequately Has Alleged Physical Damage to Property.

AFM first argues that there can be no coverage for CAA's pandemic-related losses because "CAA fails to plausibly allege that its losses were the 'direct result of physical loss or damage'". (Motion at 10.) But AFM simply ignores the well-plead allegations in the Complaint that the virus was present on and around CAA's property and the property of others in CAA's supply chain and that it physically alters the airspace and the surfaces of the property on which it lands:

> Based on available scientific data, SARS-CoV-2 spreads largely through "community transmission" and often by people who are asymptomatic. SARS-CoV-2 physically alters the air in which it is found and the surfaces of property on which it lands. CAA is informed and believes, and thereon alleges, that SARS-CoV-2 was present at various times during the relevant AFM policy periods on and in its insured properties and the premises of others in CAA's "supply chain", and/or that would have been present had it not been

for the closures of the properties to prevent the further spread of SARSCoV-2 and thereby present threatened property damage covered under the policies issued by AFM.

(Compl., ¶¶ 3, 100.)

To be clear, CAA's position is not—as AFM contends—that its losses solely "were caused by government orders, not the actual presence of virus on any insured property". (*See* Motion at 16.) AFM's attempt to shoehorn CAA's allegations into those decisions in which insureds did make this argument is simply not consistent with the allegations in the Complaint. Instead, CAA contends that the presence of SARS-CoV-2 in its premises, and the resulting physical damage, including alteration of air and property, triggered coverage under the Policies, including the business interruption coverages afforded thereby.

District courts in the Ninth Circuit have reached different results as to whether the presence of SARS-CoV-2 can cause "physical loss or damage" to insured property. Although some courts have concluded that the alleged presence of SARS-CoV-2 is not sufficient, and that "disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces" (*see, e.g.*, *Unmasked Management, Inc. v. Century-National Ins. Co.* (S.D. Cal. 2021 512 F. Sup. 1217, 1225-26 (collecting cases)), others—including courts in the Central District of California—have held that the presence of SARS-CoV-2 constitutes a "physical intrusion that compromises the physical integrity of the property". (RJN, Ex. "1" (Order re Motion for Partial JOP at pp. 7-8); *Pez Seafood DTLA, LLC v. Travelers Indem. Co.* (C.D. Cal. 2021) 514 F.Supp.3d 1197, 1205 ("COVID-19 virus physically attaching to or entering the insured property would constitute a 'direct physical loss'"); *Madera Group, LLC v. Mitsui Sumitomo Ins.*, 2021 WL 2658498 at *9 (C.D. Cal. June 25, 2021 (adopting finding that COVID-19 can be a physical intrusion of property); *Cinemark Holdings v. Factory Mutual Ins. Co.* (E.D. Tex. 2021) 500 F.Supp.3d 565, 568-69 ("Unlike *Selery*, Cinemark alleges that COVID-19 was actually present and actually damages the property by changing the content of the air.").

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Approximately one week ago, District Judge John A. Kronstadt denied a motion for judgment on the pleadings filed by Factory Mutual, AFM's sister company, based on many of the same arguments advanced by AFM here. More specifically, Factory Mutual argued—as AFM does here—that the presence of the virus does not constitute "physical loss or damage". Based on similar allegations to those advanced by CAA in this action, Judge Kronstadt agreed with the insured that the presence of SARS-CoV-2 is "a physical intrusion that affects the integrity of a property" and satisfies the "physical loss or damage" requirement. Judge Kronstadt noted the many conflicting rulings in the Ninth Circuit and concluded it would be inappropriate to dispose of the case at the pleadings stage:

> As noted, on a motion for judgment on the pleadings, factual issues cannot be resolved. In connection with the Motion, such issues are presented as to, *inter alia,* the entry of COVID-19 on the relevant properties, and the necessary extent of responsive remedial measures, including cleaning. The Complaint sufficiently alleges that infectious respiratory droplets, which transmit COVID-19, are physical objects that may alter the property on which they land and remain. *See, e.g.*, Dkt. 1 ¶¶ 55–62. Accepting the allegations in the Complaint as true, it cannot be determined as a matter of law that the presence of COVID-19 in Plaintiff's properties could not cause "physical loss or damage" to property.

(RJN, Ex. "1" (2/3/22 Order at p.8).)

The Ninth Circuit's decision in *Mudpie*—on which AFM relies in its briefing— supports CAA's position. The Ninth Circuit affirmed the district court's decision, in which it stated that the presence of SARS-CoV-2 causes "direct physical loss or damage to property". The Ninth Circuit predicted that "California courts would construe the phrase 'direct physical loss of or damage to [property]' as requiring an insured to allege physical alteration of its property … ." (*See* 2021 WL 44865609 at *5.) The Ninth Circuit agreed that—if adequately alleged by the insured—the presence of SARS-CoV-2 can cause "direct physical loss of or damage to property" that triggers coverage under an "all risks" policy:

> Had Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different. SARS- CoV-2—the coronavirus responsible for the COVID-19 pandemic, which is

transmitted either through respiratory droplets or through aerosols which can remain suspended in the air for prolonged periods of time—is no less a "physical force" than the "accumulation of gasoline" in [*Western Fire Insurance Co. v. First Presbyterian Church*, 165 Colo. 34 (1968)] or the "ammonia release [which] physically transformed the air" in [*Gregory Packaging, Inc. v. Travelers Prop & Cas. Co.*, 2014 WL 6675934 (D. N.J. Nov. 25, 2014)].

(*Mudpie*, 487 F.Supp.3d 834, 841 n.7.)

Here, CAA has alleged the presence of SARS-CoV-2 on its premises and the premises of others in its supply chain. CAA further has alleged that SARS-CoV-2 infiltrates said premises and alters the airspace and the physical surfaces to which it attached, thereby causing physical damage. Unlike the insured in *Mudpie*, which only alleged damage as a result of the closure orders, CAA adequately has plead the existence of coverage under the Policies, and dismissal at the pleadings stage is not warranted. (Compl., ¶¶ 3, 26-34, 66, 81, 100.)

The California Court of Appeals decision in *Inns by the Sea* also supports CAA's coverage position here. There, the court specifically recognized that SARS-CoV-2 can cause a covered loss but the insured alleged that the losses were caused by civil authority orders and not by the virus itself. 71 Cal.App.5th at 703. The court noted that:

> [I]t could be possible…that an invisible airborne agent would cause a policyholder to suspend operations because of direct physical damage to property. However, the complaint here simply does not describe the circumstances because it bases its allegations on the situation created by the orders.

The *Inns by the Sea* court further noted that if an insured has alleged the presence of the virus on and around its premises—and by extension the premises of others in its supply chain—then there could be coverage for pandemic related business interruption losses:

> It could a different story if a business—which could have otherwise been operating—had to shut down because of the presence of the virus within the facility. For example, a restaurant might need to close for a week if someone in its kitchen tested positive for COVID-19, requiring the entire facility to be thoroughly sanitized and remain empty for a period.

71 Cal.App.5th at 704-05 (quoting *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 2021 WL 774141 at *2 (N.D. Cal. Feb. 25, 2021).) CAA's allegations are vastly different from those asserted by the insured in *Inns by the Sea.* Specifically, CAA adequately has plead "physical loss or damage" by alleging the presence of SARS-CoV-2 in its premises and the premises of others in its supply chain; and that the virus causes distinct, demonstrable, and physical alteration to property, including the surfaces to which it attaches and the airspace it occupies. Countless decisions—including *Mudpie* and *Inns by the Seas*—support CAA's position. Whether or not this physical alteration actually occurred is a question of fact that cannot be resolved at the pleadings stage.

### 3. <u>AFM's Reliance on the "Period of Restoration" Language in the Policies Is Not Persuasive.</u>

The "period of restoration" is simply a measure of the time during which an insured can recover business income losses and extra expense. This language does not, as AFM suggests, restrict the meaning of "direct physical loss or damage", nor does it address *whether* there is coverage; instead, it addresses *how much* coverage there is. AFM's inclusion of the words "repair or replace" in the period of restoration cannot limit the policies' coverage for "direct physical loss or damage" because it does not clearly and conspicuously apprise CAA of its purported limiting effect. It simply has no bearing on what must cause the "suspension" of CAA's operations or the loss or damage. (*See Haynes v. Farmers Ins., Exch.* (2004) 32 Cal. 4th 1198, 1204 ("any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect").) *Ungareran v. CNA*, 2021 WL 1164836 (Pa. Ct. Com. Pleas) is instructive. There, CNA argued—like AFM here—that the "period of restoration" suggests that the policy required the existence of tangible damage to trigger coverage. The *Ungareran* court rejected this argument:

> The "period of restoration" does not require repairs, rebuilding, replacement, or relocation of [the practice's] property in order for [the practice] to be entitled to coverage … [The] "period of restoration" ends when [the practice's] business is once again operating at normal capacity, or reasonably

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

could be operating at normal capacity .... [The insurers] cannot avoid providing coverage that is otherwise available simply because the end point with regard to the "period of restoration" may be, at times, slightly more difficult to pinpoint in the context of the COVID-19 pandemic. *Id.* at *8.

### 4. CAA Adequately Has Alleged Physical Loss.

CAA also contends that its allegations regarding impairment and the loss of functional use of its premises and the premises of others in its supply chain constitute "physical loss or damage", such that coverage was triggered.

Numerous courts have concluded that an impairment of an insured's ability to use covered premises for the reason/purpose that the insured purchased or leased those premises constitutes a "loss" within the meaning of "direct physical loss or damage to property". (*See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.* (N.D. Ill. 2021) 521 F.Supp.3d 729, 742 ("[A] reasonable jury can find that the Plaintiffs did suffer a direct 'physical' loss of property" due to restrictions imposed on use of premises); *Ungarean v. CNA*, *supra,* 2021 WL 1164836 at *8 ("[I]t is, at the very least, reasonable to interpret the phrase 'direct physical loss of . . . property' to encompass the loss of use of Plaintiff's property due to the spread of COVID-19 absent any actual damage to property[.]"; *Studio 417, Inc. v. Cincinnati Ins. Co.* (W.D. Mo. 2020) 478 F.Supp.3d 794, ("However, as stated, a physical loss has been adequately alleged insofar as the presence of COVID-19 and the closure Order prohibited or significantly restricted access to Plaintiff's premises.").)

Moreover, many courts have concluded that the inability to use property because of the presence of a noxious or illness-causing substance—like smoke, ammonia, asbestos, and odors—constitutes a "direct physical loss" because that presence prevents the insured from using it property for its intended purpose. (*Elegant Massage, LLC v. State Farm Mutual Auto Ins. Co.* (E.D. Va. 2020) (("[I]t is plausible that Plaintiff's [*sic*] experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive Orders because of its high risk for spreading COVID-

19, an invisible but highly lethal virus. That is, the facts of this case are similar [to] those where courts found that asbestos, ammonia, odor from methamphetamine lab, or toxic gasses from drywall, which caused properties [to become] uninhabitable, inaccessible, and dangerous to use, constituted a direct physical loss."); *N. State Deli, LKLC v. Cincinnati Ins. Co.*, 2020 WL 6281507 at *3 (N.J. Super. Ct. Oct. 9, 2020) ("In the context of the Policies, therefore, 'direct physical loss' describes the scenario where businessowners and their employees, customers, vendors, suppliers, and others lose the full range of rights and advantages of using or accessing their business property. This is precisely the loss caused by the Government Orders."; *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934 at *6 (D.N.J. Nov. 15, 2014) (unsafe levels of ammonia in the air inflicted "direct physical loss of or damage to" the juice packing facility "because the ammonia physically rendered the facility unusable for a period of time"); *Western Fire Ins. Co. v. First Presbyterian Church* (Colo. 1968) 437 P.2d 52 (church building sustained physical loss or damage when it was rendered uninhabitable due to gasoline under the building); *Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.* (3rd Cir. 2002) 311 F.3d 226, 236 (asbestos fibers); *Essex v. BloomSouth Flooring Corp.* (1st Cir. 2009) 562 F.3d 399, 406 (unpleasant odor in home).)

Significantly, Factory Mutual has taken the position in prior court filings that loss of functionality and/or reliability does in fact constitute "physical loss or damage" based on "case law which broadly interprets the term 'physical loss or damage' in property insurance policies". In *Factory Mutual Insurance Company v. Fed. Ins. Company*, No., *supra*, 1:17-cv-00760-GJF-LF, the physical loss or damage at issue was caused by mold infestation, which existed on the surface of property and in the air but did not cause structural alteration of the property. Factory Mutual argued that the property became "unfit for its intended use—manufacturing injectable pharmaceutical products", such that there was "physical loss or damage". Factory Mutual filed a motion *in limine*, by which it sought to preclude evidence that "the mold infestation is *not* 'physical loss or damage' under its policy and thus, not covered." (RJN, Ex. "3" at pp.3-4.)

In support of its motion, Factory Mutual argued that "numerous courts have concluded that loss of functionality or reliability under similar circumstances constitutes physical loss or damage." (*Id.* at p.4.) Factory Mutual—like CAA here—cited numerous cases involving loss of functionality based on the presence of noxious substances that rendered property uninhabitable. (*Id.*) AFM is now asserting the exact opposite position, *i.e.*, AFM is arguing that loss of functionality does not constitute "physical loss or damage". At best, these polar opposite positions demonstrate that the phrase "physical loss or damage" is ambiguous and that CAA's interpretation—like Factory Mutual's—is reasonable; at worst, they show that these carriers have no problem shifting their interpretation of this language to suit the particular situation at hand.

## C. **CAA Is Entitled To Coverage Under California's Mitigation Doctrine.**

Although not mentioned by AFM in its moving papers, this Court also must consider whether CAA's losses are recoverable under the statutory and common duty to mitigate.

CAA contends that that the losses it sustained as a result of the necessary suspension of its business operations are recoverable as mitigation expenses. (Compl., ¶ 4.) More specifically, and as alleged in the Complaint, because the presence of SARS-CoV-2 in the CAA's premises causes distinct, demonstrable, and physical alteration to property, including to the surfaces to which it attaches and the airspace it occupies, CAA had an affirmative obligation to shut down operations. (Compl., ¶¶ 3, 98, 100.) Had CAA not suspended its operations, it would have sustained more covered property damage and/or would have been exposed to third-party claims that they contributed to the spread of the virus. AFM simply ignores CAA's well-plead allegations regarding mitigation.

"An insurer is liable … [i]f a loss is caused by efforts to rescue the thing insured from the peril insured against". (Cal. Ins. Code § 531(b).) Section 531(b) codifies "the duty implied in law on the part of the insured to labor for the recovery and restitution of damages or detained property … and it contemplates a correlative duty of reimbursement separate from and supplementary to the basic insurance contract." (*Young's Mkt. Co. v. Am. Home Assur. Co.* (1971) 4 Cal.3d 309, 313.) Indeed, "the insured has the duty of ***preventing a***

*threatened* insurable loss and mitigating such loss when it does occur." *S. Cal. Edison Co. v. Harbor Ins. Co*., 83 (1978) Cal. App. 3d 747, 757 (emphasis added); *see also AIU,* 51 Cal. 3d at 832–33 & n.15 (rejecting argument that actions "prophylactic in nature" "cannot be the subject of insurance"). When an insured prevents a threatened loss, it "acts for the benefit of the insurer," giving rise to the insurer's duty "to reimburse the insured for prevention and mitigation expenses." *S. Cal. Edison*, 83 Cal. App. 3d at 757.

By suspending operations in compliance with the Closure Orders, CAA prevented SARS-CoV-2 from infiltrating its premises and discharged their statutory and common law duty to prevent covered property damage as well as potential third-party claims. (*See id* at 757); *See Globe Indem. Co. v. State*, (1974) 43 Cal. App. 3d 745, 748 (fire suppression costs incurred to prevent fire from spreading to others' property covered as mitigation); *AIU*, 51 Cal. 3d at 833 (environmental response costs "incurred largely to prevent damage previously confined to the insured's property from spreading . . . are 'mitigative' in character"); *Watts Indus., Inc. v. Zurich Am. Ins. Co.*, (2004) 121 Cal. App. 4th 1029, 1043 (removal of parts to stop leaching of lead into water supply covered as "reasonable" "remediation and mitigation").)

## D. <u>The Contamination Exclusion In The Policies Does Not Bar Coverage For CAA's Pandemic-Related Losses.</u>

AFM argues that the contamination exclusion in the Policies unambiguously precludes coverage as a matter of law. Not so. While courts are divided on how to interpret the contamination exclusion when it comes to pandemic-related losses, more recent decisions (including in this District) have concluded that the **<u>identical</u>** exclusion that is used in the Policies does **<u>not</u>** bar coverage for pandemic-related losses or, at a minimum, that the exclusion is ambiguous, such that dismissal at the pleadings stage is not warranted.

AFM does not cite any California authorities (state or federal) interpreting its contamination exclusion. On February 3, 2022, in *Live Nation Entertainment, Inc. v. Factory Mutual Ins. Co.*, *supra, Case* No. 2:21-cv-00862-JAK-KS, Judge Kronstadt

analyzed the same exclusion in its "plain and ordinary sense" and had no trouble concluding that it did not bar coverage for pandemic-related losses:

> Unlike the virus exclusion at issue in *Salon XL*, the Contamination Exclusion contains an express exception for physical damage covered by other provisions of the Policy: "If contamination . . . directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured." Dkt. 15-3 at 24 (emphasis removed). The words in an insurance contract "are to be interpreted in their 'plain and ordinary sense.'" *Connick*, 784 F.2d at 1020 (quotation omitted). As discussed above, the Complaint sufficiently alleges that COVID-19 caused physical damage that would be covered by the provisions of the Policy pertaining to physical loss and damage. Thus, on its face, the Contamination Exclusion does not exclude physical damage caused by COVID-19.

(RJN, Ex. "1" at p. 9.) Here, CAA has alleged "physical loss or damage" resulting from the presence of SARS-CoV-2 and thus the contamination exclusion in the Policies—on its face—does not bar coverage for CAA's losses.

A Colorado state trial court reached the same conclusion on January 26, 2022 regarding the same contamination exclusion. In *University of Colorado v. Factory Mutual Ins. Co.*, Case No. 2021CV30206, the court denied Factory Mutual's motion for partial judgment on the pleadings, finding that:

> [B]ecause the Policy provides that contamination and costs due to contamination are excluded unless resulting from physical damage not otherwise excluded, *see* Policy at 14, and because it is plausible that further contamination could occur from the physical damage CU alleges that COVID-19 has caused, the Court finds that the Contamination Exclusion does not unambiguously foreclose coverage. As such, and when liberally construing the provisions in favor of coverage and against limitations (s*ee Tepe*, 898 P.2d at 1327) the Court cannot conclude based on the pleadings alone that the Contamination Exclusion bars coverage for the losses CU alleges.

(RJN, Ex. "2" (1/26/22 Order denying Motion for Partial JOP at pp.6-7).)

Notably, at least two district courts have determined that AFM's contamination exclusion is ambiguous. In *Live Nation*, after concluding that the exclusion did not bar coverage, Judge Kronstadt went on to observe that the language of the contamination

exclusion "presents issues as to ambiguity". (RJN, Ex. "1" at p.10.) For this additional reason, Judge Kronstadt denied Factory Mutual's motion for judgment on the pleadings. A year prior, in *Thor Equities, LLC v. Factory Mutual Ins. Co.* (S.D.N.Y. 2021) 531 F.Supp.3d 802, the court found that Factory Mutual's contamination exclusion was susceptible to more than one reasonable interpretation. In *Thor*, the insured argued that the failure of the contamination exclusion to mention any "loss" due to contamination, while specifically referencing "any cost due to contamination", indicated that business interruption losses were not subject to the exclusion. The *Thor* court rejected Factory Mutual's argument that the exclusion unambiguously applied to business interruption losses. In this regard, the *Thor* court noted that the policy distinguished between "cost" and "loss" elsewhere but no such distinction appeared in the contamination exclusion. *Id.* at 808.  If AFM wanted the contamination exclusion to bar CAA's pandemic-related business interruption losses, it could have made clear that the exclusion included costs **and** losses. It did not. Again, "exclusionary clauses are interpreted narrowly against the insured." (*MacKinnon*, *supra*, 31 Cal.4th at 648.)

## E. <u>The Loss Of Use Exclusion In The Policies Does Not Bar Coverage For CAA's Coverage Claims.</u>

The Policies exclude "loss of market or loss of use". AFM insists that this exclusion bars CAA's recovery for its losses associated with COVID-19 because "CAA's alleged losses stem entirely from the suspension of operations at its facilities and the facilities 'within AA's "supply chain"' pursuant to government orders. (Motion at 22.) As discussed below, the loss of use exclusion does not excuse an insurer's duties under a policy that insures the indirect, consequential, economic losses that flow from property damage, *i.e.*, business interruption losses flowing from physical loss or damage caused by COVID-19.

AFM's interpretation of the loss of use exclusion would render illusory the Policies' coverages for business interruption losses that result from direct physical loss or damage. The correct reading of the exclusion is that because CAA adequately has alleged physical loss or damage as a result of the SARS-CoV-2, the loss of use exclusion would not preclude

coverage for CAA's business interruption losses resulting from the physical loss or damage. Indeed, this is precisely how Judge Kronstadt read the exact same exclusion in *Live Nation*. (RJN, Ex. "1" Order at p.10.) Courts have interpreted AFM's loss of use exclusion in line with this distinction. In *Ashland Hosp. Corp. v. Affiliated FM Insurance Co.*, 2013 WL 4400516 at *1 (E.D. Ky.) a hospital's computer software suffered damage when the data center's air conditioning system failed. AFM argued that an exclusion for "loss of use; loss of market" applied because really, the hospital was just complaining that it could not use its software. (*Id.* at *11.) The court disagreed, holding that a change in temperature was physical in nature, so the hospital was seeking coverage for actual property damage, not consequential damages. (*Id.* at *12.) The *Ashland* court reasoned that were the exclusion interpreted to mean anything other than consequential damages, it "would swallow up the coverage portion of the Policy, since by definition, damaged property may also be unusable." (*Id.* at *11. *See also Bailer v. Erie Ins. Exch.* (Md. 1997) 687 A.2d 1375, 1380 ("If the exclusion totally swallows the insuring provision, the provisions are completely contradictory. That is the grossest form of ambiguity … .").)

AFM's reliance on *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.* (7th Cir. 2021) 19 F.4th 1002 is misplaced. In *Bradley*, the insured sought coverage for losses associated with the partial closure of a hotel during the pandemic. The Seventh Circuit affirmed the dismissal of the insured's claims under Rule 12(b)(6) because the insured alleged loss of use that was not tethered to any direct physical loss or damage that could serve as a covered loss. Had the insured in *Bradley*—like CAA—alleged that the presence of SARS-CoV-2 caused damage to the insured property, the resulting economic harm (i.e., the inability to rent hotel rooms) would have been covered. But in *Bradley*, the insured's claim was that "the loss of use is the alleged *cause* of loss", not "the *result* of a covered cause of loss". (*Id.* at 1007.) That is far different than what CAA alleges here.

/ / /

/ / /

### F.  **Because CAA Has Plead A Viable Breach Of Contract Claim, It Would Be Error To Grant The Instant Motion As To CAA's Bad Faith Claim.**

Because CAA's breach of contract claim remains viable, there is no reasonable basis for the Court to grant AFM judgment on the pleadings as to CAA's bad faith claim. (*Manzarek v. St. Paul Fire & Marine Ins. Co.* (9th Cir. 2008) 519 F.3d 1025, 1034 (because district court erred in dismissing insured's breach of contract claim, "the district court also erred by summarily dismissing the claim for breach of the implied covenant"); *S. Cal. Pizza Co., LLC, v. Certain Underwriters* (2019) 40 Cal.App.5th 140, 155 (when underlying suit was potentially subject to coverage, dismissal of insured's bad faith claim was error).)

Moreover, CAA included numerous allegations that support a bad faith claim. By way of example, CAA has alleged that AFM wrongfully implemented a predetermined set of "talking points", whereby AFM claims personnel are instructed to deny and/or limit coverage without performing any coverage investigation. The allegation of these facts alone precludes judgment on the pleadings as to CAA's bad faith claim. Notably, AFM incorrectly assumes that a bad faith claim cannot exist unless the Policies are breached. However, there are circumstances where a bad faith claim might survive despite the absence of a non-covered claim, including where—as here—an insurer fails to properly investigate a claim or unreasonably delays the investigation. (*See, e.g., Ram v. Infinity Select Ins.* (N.C. Cal. 2011) 807 F.Supp.2d 843, 860-61.)

### G. **CAA Is Entitled To Develop Extrinsic Evidence.**

CAA should be permitted to pursue discovery concerning the parties' understanding and interpretation of the "physical loss or damage" provision and the exclusions upon which AFM relies. Under California law, courts are required to review extrinsic evidence whenever that evidence could bear on the contracting parties' intent. (*See Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, (1968) 69 Cal. 2d 33, 39–40 ("[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties."); *see also Dore v. Arnold Worldwide, Inc.*, (2006) 39 Cal. 4th 384, 391 ("'Even if a contract appears unambiguous [], a latent ambiguity may be

24

exposed by extrinsic evidence ….'"").) Here, extrinsic evidence is necessary and will include evidence of the policies' intent, including how AFM understood the critical provisions and exclusions. Given that courts have concluded that the "physical loss or damage" language and the two exclusions relied on by AFM in the instant Motion are ambiguous, CAA should be given a reasonable chance to develop extrinsic evidence. (*See Aragon-Haas v. Family Sec. Ins. Servs., Inc.*, (1991) 231 Cal. App. 3d 232, 238–41 (error to dismiss complaint without allowing plaintiff to develop extrinsic evidence in support of interpretation).)

## V.   <u>CONCLUSION</u>

The Court should deny the instant Motion. However, if the Court is inclined to grant any part of the Motion, CAA respectfully requests leave to amend.

Dated: February 11, 2022                    BOREN, OSHER & LUFTMAN, LLP


                                                     */s/ Jeremy J. Osher*
                                            _____
                                            Jeremy J. Osher
                                            Attorney for Plaintiffs
                                            CREATIVE ARTISTS AGENCY,
                                            LLC and CAA HOLDINGS, LLC

PLAINTIFFS CREATIVE ARTSISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
)  ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

On January 21, 2022, I served the document(s) as described below on interested parties in this action as follows:

**PLAINTIFFS CREATIVE ARTISTS AGENCY, LLC AND CAA HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT AFFILIATED FM INSURANCE COMPANY'S MOTON FOR JUDGMENT ON THE PLEADINGS**

| | |
|---|---|
| ☒ | electronically by using the Court's ECF/CM System. |
| ☒ | by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below. |

| | |
|---|---|
| ROBINS KAPLAN LLP<br>Amy M. Churan, SBN 216932<br>AChuran@RobinsKaplan.com<br>Daniel L. Allender, SBN 264651<br>DAllender@RobinsKaplan.com<br>2049 Century Park East, Suite 3400<br>Los Angeles, CA 90067<br>Telephone: (310) 552-0130<br>Facsimile: (310) 229-5800 | *Attorney for Defendant Affiliated FM Insurance Company* |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 21, 2022, at El Segundo, California.

/s/ J. Austin Raymundo
Jon Austin Raymundo

1
PROOF OF SERVICE