UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE ARTISTS AGENCY, LLC, a Delaware limited liability company; and CAA HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY, a Rhode Island limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-CV-08314-AB (GJSx)<br><br>**ORDER GRANTING DEFENDANT AFFILIATED FM INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Before the Court is Defendant Affiliated FM Insurance Company's ("Defendant") Motion for Judgment on the Pleadings. ("Motion," ECF No. 10.) Plaintiffs Creative Artists Agency, LLC and CAA Holdings, LLC (collectively "Plaintiffs") filed an opposition. ("Opp'n," ECF No. 14.) Defendant has filed a reply. ("Reply," ECF No. 16.) After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons stated below, the Court **GRANTS** Defendant's Motion.

1.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 10, 2021, Plaintiffs filed a Complaint against Defendant in the Superior Court of California for the County of Los Angeles asserting the following causes of action: (1) breach of written contract; (2) tortious breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief. (*See generally* Compl., ECF No. 1-1, Ex. A.) On October 20, 2021, Defendant removed the matter to federal court based on diversity jurisdiction. (*See* ECF No. 1.)

Plaintiff Creative Artists Agency, LLC "is one of the world's leading entertainment and sports talent agencies and represents many of the most successful and innovative professionals working in sports, film, television, music, video games, theatre, and digital content." (Compl. at ¶ 12.) Plaintiff CAA Holdings, LLC is the parent company of Creative Artists Agency, LLC. (*Id.* at ¶ 13.) The Complaint alleges that Defendant failed to pay Plaintiffs' claims arising from the losses sustained as a result of the COVID-19 pandemic under the insurance policies[1] (herein referred to as the "Policy") Plaintiffs purchased from Defendant. (*See generally* Compl.) Specifically, "due to the pandemic, and resulting civil authority orders, [Plaintiffs'] operations were significantly disrupted," and "the use and functionality of its premises, and the premises of others within [Plaintiffs'] 'supply chain,' were substantially impaired due to [the COVID-19 virus], [and the] subsequent actions and orders of state and local authorities[.]" (*Id.* at ¶ 4.) Furthermore, the Complaint alleges that Plaintiffs are informed and belief, "that [COVID-19] particles attached to and damaged [their] insured premises as well as the premises upon which [Plaintiffs] depended to deliver and accept services and the surrounding vicinity." (*Id.* at ¶ 100.)

---

[1] The Complaint references and attaches two different polices—Policy No. SS603 for the term of February 15, 2019 through February 15, 2020, and Policy No. SS980 for the term of February 15, 2020 through February 15, 2021. The relevant provisions of both policies are identical, but since all of Plaintiffs' alleged losses occurred after March 1, 2020, all citations and pin cites are to Policy No. SS980.

2.

However, the Complaint does not specifically identify how the virus particles allegedly damaged Plaintiffs' premises and the surrounding vicinity. The Complaint also alleges that Plaintiffs' compliance with the civil authority closure orders, prevented "further covered property damage, such that [their] losses are properly characterized as necessarily mitigation expenses." (*Id.*)

When Plaintiffs notified Defendant of the alleged losses incurred, Defendant took the "position that the only coverage potentially available" was under the Communicable Disease Coverage provisions,[2] which are "subject to aggregate sub-limits of $100,000 . . . ." (*Id.* at ¶ 7.)

### A. Alleged Coverage in the Policy

The general framework of the Policy at issue is that it "covers property, as described in [the] Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE," unless an exception or exclusion as stated in the Policy applies. (*Id.* at ¶ 60.) Plaintiffs seek coverage under several provisions of the Policy. Defendant disputes that these provisions provide liability coverage and further asserts the Contamination Exclusion and Loss of Use Exclusion provisions bar coverage. The relevant language of the provisions the parties rely upon are outlined below.

#### *i. Business Interruption Coverage and Extension Provisions*

The Business Interruption Coverage states in relevant part that: "[t]his Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured. . ." (*Id.* at ¶ 64.) Plaintiffs allege the Policy enumerates sixteen different "Business Interruption Coverage Extensions" that they understood would extend the coverage available to them "in the event of economic and financial losses resulting from an unanticipated

---

[2] Plaintiffs do not allege that Defendant denied coverage under the Communicable Disease Coverage provisions under their breach of contract claim. (*See generally* Compl.; *see also generally* Opp'n.) Rather, Plaintiffs allege Defendant acted in bad faith when it only offered coverage under the Communicable Disease Coverage provisions. (*Id.* ¶¶ 90-101, 107-115.)

3.

and unprecedented catastrophe, such as a global pandemic." (*Id.* at ¶ 65.) The extra expense extension, ingress/egress extension, protection and preservation of property extension, and supply chain extension—which Plaintiffs allege apply here—require that the loss incurred be as a "direct result of physical loss or damage." (*Id.* at ¶¶ 65, 69, 77, 79.)

### ii. Civil Authority Coverage Provision

The Civil Authority Coverage "covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a location provided such order is the direct result of physical damage of the type insured at a location or within five (5) statute miles of it." (*Id.* at ¶ 71.)

### iii. Contamination Exclusion and Loss of Use Exclusion Provisions

The Contamination Exclusion excludes "contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." (*Id.* at Ex. 2, 230.) The Policy defines the term "contamination" to mean "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." (*Id*. at Ex. 2, 267.)

Similarly, the Loss of Use Exclusion appears in a list of other exclusions, under the heading, "EXCLUSIONS." (*Id*. at Ex. 2, 227.) The Loss of Use Exclusion provision applies to: "[l]oss of market or loss of use." (*Id*. at Ex. 2, 229.)

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). As such, the same legal standard applies to both motions. *Id.*

To survive a motion to dismiss or for judgment on the pleadings, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

Courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft*, 556 U.S. at 679. Courts must also draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations and internal quotation marks omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008); *see also Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049 (9th Cir. 2006).

///

### III. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). Judicial notice permits a court to consider an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2); *see also* Fed. R. Evid. 201(b), advisory committee's note ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy."). The Ninth Circuit has made clear that "[a] court must also consider—and identify—which fact or facts it is noticing from . . . [a document]. Simply because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, Plaintiffs seek judicial notice of three court documents they contend are relevant to their Opposition: (1) a February 3, 2022 Order denying a Motion for Partial Judgment on the Pleadings in *Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company*, No. 2:21-cv-00862-JAK-KS before the United States District Court for the Central District of California; (2) a January 26, 2022 Order denying a Motion for Partial Judgment on the Pleadings and/or for Determination of Questions of Law in *Regents of the University of Colorado v. Factory Mutual Insurance Company*, Case No 2021-CV-30206 before the District Court for Boulder County in the State of Colorado; and (3) a Motion *in Limine* filed on November 19, 2019 in *Factory Mutual Insurance Company v. Federal Insurance Company*, No. 1:17-cv-00760-GJF-LF before the United States District Court for the District of New Mexico. (*See* ECF No. 15.) Defendant does not directly object to the introduction of these exhibits, although it disputes that they add anything to the "analysis of this

case." (Reply 12:9-23.)

Because a court may take judicial notice of documents filed on a court's docket and another court's opinion "for the existence of the opinion," Plaintiffs' exhibits are judicially noticeable. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); s*ee also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). Accordingly, these exhibits are accepted for what they represent, but the Court is not bound by any specific fact findings and legal conclusions set forth in them. *See Khoja*, 899 F.3d at 999.

## IV. DISCUSSION

### A. Breach of Contract Claim

To allege a breach of contract claim in California, Plaintiffs must establish: (1) the existence of a contract, (2) Plaintiffs' performance (or excuse for nonperformance) under the contract, (3) Defendant's breach of the contract, and (4) damages resulting from Defendant's breach. *See Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014). Because Defendant's Motion depends on whether the above-noted provisions of the Policy provide coverage or not, the Court must consider the applicable California rules for interpreting insurance policies.

Under California law, "interpretation of an insurance policy is a question of law." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (internal quotation marks omitted). "When interpreting a policy provision, [courts] must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (internal quotation marks omitted); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.") "The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Ent. Am. Inc. v. Am.*

7.

*Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641 and *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)); *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible …."). Under California law, an insured has the initial burden of establishing "that the occurrence forming the basis of its claim is within the basic scope of insurance coverage [and] once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998), *as modified on denial of reh'g* (Oct. 14, 1998) (internal citations omitted).

### ***i. Business Interruption Coverage and Extension Provisions***

To be entitled to coverage under the Business Interruption Coverage, Extra Expense Extension, Ingress/Egress Extension, Protection and Preservation of Property Extension, and Supply Chain Extension provisions, the Policy requires that the loss incurred be a "direct result of physical loss or damage." (*See* Compl. at ¶¶ 64-65, 69, 77, 79.) Plaintiffs assert that the incurred losses were a "direct result of physical loss and damage" based on the civil authority closure orders and the suspected presence of the COVID-19 virus on Plaintiffs' premises and the surrounding premises. (*See* Opp'n 12-16.) The Court is unpersuaded by Plaintiffs' arguments.

As an initial matter and in contrast to Plaintiffs' assertions, the meaning of "physical loss or damage" is not ambiguous, but rather well established under California law. In order for there to be "direct physical loss of or damage to" property, there must be a "physical alteration" to the property. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 891–92 (9th Cir. 2021) (citing *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)). For example, "some external force must have acted upon the insured property to cause a *physical change* in the condition of the property." *MRI*

8.

*Healthcare Center of Glendale, Inc.*, 187 Cal. App. 4th at 780 (citations omitted). "Detrimental economic impact" does not suffice. *Id.* at 779 (citation omitted); *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) ("[D]iminution in value is not a covered peril, it is a measure of loss" in property insurance) (citation omitted). Indeed, in *Mudpie*, the Ninth Circuit declined to "interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use,'" based on California cases that have distinguished economic losses from physical ones. *Mudpie, Inc.*, 15 F.4th at 892. As such, to the extent Plaintiffs assert that their loss of use of the insured properties constitutes a "physical loss or damage," the Ninth Circuit has rejected this exact argument.

Furthermore, Plaintiffs' argument that the presence of the COVID-19 virus at the insured and surrounding properties constitutes physical loss or damage is also unavailing. The Court finds *Inns-by-the-Sea* instructive here as it is factually analogous. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("Where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.") (internal citation and quotation marks omitted).

In *Inns-by-the-Sea*, the plaintiff argued that "the presence of COVID-19 clearly constitute[d] the requisite 'damage,' . . . because its physical presence transforms property, specifically indoor air and surfaces, from a safe condition to a dangerous and potentially deadly condition unsafe and unfit for its intended purpose." *Inns-by-the-Sea*, 71 Cal. App. 5th at 699, *review denied* (Mar. 9, 2022). In a well-reasoned decision, the Court of Appeal for the Fourth District of California held that "despite [plaintiff's] allegations that the COVID-19 virus was present on the premises, it ha[d] not identified any direct physical damage to property that caused it to suspend its operations." *Id.* at 705. Accordingly, the Court of Appeal concluded that the allegations in the complaint regarding the presence of the virus on the insured

properties was insufficient to establish "direct physical loss of" property in order to trigger coverage under the policy. *Id.* at 700–05. Similarly, two other California Courts of Appeal have reached the same conclusion as *Inns-by-the-Sea*. *See United Talent Agency v. Vigilant Ins. Co.*, 77 Cal. App. 5th 821, 839 (2022) (concluding that "cleaning or employing minor remediation or preventive measures to help limit the spread of the virus does not constitute direct property damage or loss."); *see also Musso & Frank Grill Co. v. Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 760 (2022), *review filed* (May 27, 2022) ("Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic.").[3]

Here, as in *Inns-by-the-Sea*, beyond vague references to the presence of the virus on the insured and surrounding properties, Plaintiffs fail to plausibly allege that the virus caused any "distinct, demonstrable, [or] physical alteration" to the properties. (*See* Compl. ¶¶ 3, 66, 81, 100.) Indeed, other than conclusory and speculative allegations, the Complaint lacks the required specificity and does not allege any physical loss or damage that would trigger coverage under the provisions at issue in the Policy. Similarly, numerous district courts within this circuit have rejected this exact argument in factually analogous cases. *See, e.g.*, *Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co. LTD.*, 530 F. Supp. 3d 879 (N.D. Cal. 2021) (collecting cases rejecting the theory that the virus constitutes direct physical loss of or damage to because COVID-19 can remain on the surface of objects or materials); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal.

---

[3] The Court is aware of the recent decision by the Court of Appeal for the Second District of California, *Marina Pac. Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, No. B316501, 2022 WL 2711886 (Cal. Ct. App. July 13, 2022), which reaches a conclusion that is "at odds with almost all (but not all) decisions" considering these issues, including *Inns-by-the-Sea*, *United Talent Agency*, and *Musso*. *See Marina Pacific Hotel and Suites, LLC*, 2022 WL 2711886, at *8. However, the Court finds the allegations raised in *Marina Pacific Hotel & Suites* are factually distinguishable from the allegations raised here, and is also at odds with the majority of decisions within this district.

10.

2020) ("[T]he presence of the virus itself, or of individuals infected [with] the virus, at Plaintiff's business premises or elsewhere do[es] not constitute direct physical losses of or damage to property."); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 508 F. Supp. 3d 575, 581 (N.D. Cal. 2020) (holding that since "any contaminated surfaces can be disinfected and cleaned . . . COVID-19 does not cause 'physical alteration' or 'physical change in the condition' of property"); *Protege Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*, 517 F. Supp. 3d 981, 988 (N.D. Cal. 2021) ("Even if Plaintiff had known of a specific instance of COVID-19 particles inside of its business, evidence of such would still not qualify as a 'physical change' to the property"); *Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*, 517 F. Supp. 3d 1096, 1106 (S.D. Cal. 2021) (holding the presence of the virus did not cause "physical damage to property because the virus harms human beings, not property"); *Crown Intermediate Holdco Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 2:22-CV-01248-SB-AFM, 2022 WL 2301880, at *4 (C.D. Cal. June 17, 2022) ("[C]onsidering the plain meaning of the policy's language, the Court is unpersuaded that any layperson or reasonable policyholder would understand the presence of a virus on some of the surfaces in [plaintiff's] theaters as physical damage or alteration of the theaters."); *Madison Int'l v. Valley Forge Ins. Co.*, No. 21-8246-GW-KKx, 2022 WL 224853, at *3 (C.D. Cal. 2022) (holding the analysis in *Inns-by-the-Sea* "squarely applied" where Plaintiff alleged that the "physical contamination by the COVID-19 [virus] constitutes a physical alternation that is indicative of physical damage."); *In-N-Out Burgers v. Zurich Am. Ins. Co.*, No. 8:20-cv-01000-JLS-ADS, 2022 WL 472800, at *3-4 (C.D. Cal. 2022) (same).[4]

    Accordingly, the Court finds that the allegations in the Complaint fail to show

---

[4] Although some district courts within this circuit have reached a different conclusion regarding whether the alleged presence of the COVID-19 virus is sufficient to constitute physical loss or damage to an insured property, this Court is persuaded by the reasoning expressed in the above-cited opinions.

11.

that Plaintiffs are entitled to coverage under the Business Interruption Coverage, Extra Expense Extension, Ingress/Egress Extension, or Supply Chain Extension provisions of the Policy.

### ii. Civil Authority Coverage

There is also no coverage under the Civil Authority Coverage provision of the Policy. To trigger coverage under this provision, there must be "an order of civil or military authority" the must prohibit "access to a location provided such order is the direct result of physical damage of the type insured at a location or within five (5) statute miles of it." (Compl. at ¶ 71.)

Here, the Complaint does not allege that the civil authority closures orders were directed primarily at Plaintiffs' properties due to the presence of the COVID-19 virus. Similarly, the Complaint does not plausibly allege a reason for Plaintiffs' losses other than the mandated closures and limitations on business operations. Indeed, because the civil authority orders did not prohibit access to Plaintiffs' properties as intended under the Civil Authority Coverage, Plaintiffs are not entitled to coverage. *See e.g., Inns-by-the-Sea*, 71 Cal. App. 5th at 711–12 (holding the civil authority closure orders did not give rise to coverage under the Civil Authority provision because "[t]he Orders give no indication that they were issued 'due to direct physical loss of or damage to' any property."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 945 (S.D. Cal. 2020) ("The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiff's place of business."); *Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. LA CV20-07132 JAK (AFMx), 2022 WL 1769128, at *11 (C.D. Cal. May 27, 2022) (holding the operative complaint failed to allege coverage under the Civil Authority provision because the public health orders were issued "as part of an effort to prevent the spread of COVID-19, rather than to prohibit access to a premises that had suffered physical loss or damage.").

      Accordingly, the Complaint does not sufficiently allege that Plaintiffs are entitled to coverage under the Civil Authority Coverage provision of the Policy

### iii. Contamination Exclusion Provision

      The Court further finds that coverage is precluded under the Policy's Contamination Exclusion provision.[5] This provision clearly and unequivocally exempts loss of damage "*due to the actual or suspected presence* of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease causing or illness causing agent, fungus, mold or mildew." (Compl. at Ex. 2, 227 (emphasis added).)

      Several courts within this district have held that similar Contamination Exclusion provisions bar coverage even if plaintiffs are able to show that they suffered "physical loss of or damage to" their premises. *See AECOM v. Zurich Am. Ins. Co.*, No. LA CV21-00237 JAK (MRWX), 2021 WL 6425546, at *9 (C.D. Cal. Dec. 1, 2021) (holding "the virus is the proximate cause of Plaintiff's claims, and those claims are barred by the Contamination Exclusion"); *HP Tower Invs., LLC v. Nationwide Mut. Ins. Co.*, No. SACV 21-01369-CJC (KESX), 2021 WL 4841054, at *3 (C.D. Cal. Oct. 12, 2021) (finding "[c]overage would also be precluded under the policies' virus exclusion"); *Shouthouse Apparel, Inc., et al., v. Travelers Indemnity Company of Connecticut*, 2021 WL 4472905, at *4 (C.D. Cal. July 20, 2021) ("[E]ven assuming that plaintiffs have, or could allege, physical loss or damage as required by the relevant Policy provisions, the Virus Exclusion would nonetheless bar coverage") (cleaned up); *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 514 F. Supp. 3d 1197,

---

[5] Having found the Contamination Exclusion provision in the Policy precludes coverage in this case, the Court declines to address Defendant's alternative argument whether the Loss of Use Exclusion provision in the Policy also precludes coverage. (*See* Mot. at 20:26-22:15.) Similarly, the Court's decision not to address Plaintiffs' mitigation argument should not be taken to mean the Court did not consider that argument; rather, it should be taken to mean the Court *rejected* that argument. *See Roy v. Cnty. of Los Angeles*, No. CV 12-09012-AB (FFMx), 2018 WL 3439168, at *4 (C.D. Cal. July 11, 2018).

1207–08 (C.D. Cal. 2021), *appeal dismissed,* No. 21-55100, 2021 WL 6881068 (9th Cir. Nov. 12, 2021) (finding that "the Virus Exclusion clearly and unambiguously applies, as courts applying similar virus exclusions to COVID-19 have consistently found" because "whether framed as a response to a general public health threat in the form of a global pandemic, or to a specific viral intrusion, Plaintiff cannot escape that a virus is the root cause of the Orders"); *10E, LLC v. Travelers Indem. Co. of Connecticut*, 500 F. Supp. 3d 1070, 1074 (C.D. Cal. 2020) (explaining that the argument "that the language of the virus exclusion indicates that it does not apply to losses caused only indirectly by business restrictions during the pandemic ... would stretch the virus exclusion beyond its plain meaning").

      Moreover, Plaintiffs cannot plausibly dispute that the civil authority closure orders were issued in response to the COVID-19 virus, and thus, that the virus is the "efficient proximate" cause of the loss incurred. *Mudpie, Inc.*, 15 F.4th at 894. In *Mudpie*, the Ninth Circuit held that the Virus Exclusion provision applied and barred coverage because although the plaintiff argued "it was the government orders that most directly caused its injury, [plaintiff] does not plausibly allege that 'the efficient cause,' i.e., the one that set others in motion, . . . was anything other than the spread of the virus throughout California, or that the virus was merely a remote cause of its losses." *Id.* (internal citations omitted); *see also Green Apple Event Co., Inc. v. Liberty Mut. Grp., Inc.*, No. CV 21-6154 FMO (AFMx), 2022 WL 224850, at *2 (C.D. Cal. Jan. 24, 2022) ("Because plaintiff does not plausibly allege that the efficient cause of its injury was anything other than the spread of the virus, the Policy's Virus Exclusion also bars coverage for its claims."); *Musso & Frank Grill Co.*, 77 Cal. App. 5th at 761 (holding a similar virus exclusion provision barred coverage despite the plaintiff's allegation "that its losses were caused by the public health orders" since the "orders were a response to the COVID-19 virus."). Accordingly, the Contamination Exclusion provision applies here and precludes

coverage.

### B. Breach of Implied Covenant Claim and Declaratory Relief Claim

"California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (internal citation omitted). Here, Plaintiffs have failed to allege that "benefits [were] withheld for proper cause, [so] there is [no] breach of the implied covenant." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (Cal. Ct. App. 1990). Furthermore, because Plaintiffs have failed to provide a cognizable legal theory or set of facts about the Policy that would allow the Court to provide declaratory relief, Plaintiffs' third cause of action similarly fails. *See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court ... may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions."), *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

### C. Leave to Amend

Plaintiffs assert leave to amend is warranted because they "should be permitted to pursue discovery concerning the parties' understanding and interpretation of the 'physical loss or damage' provision and the exclusions upon which [Defendant] relies." (Opp'n at 24:21-23.) However, the Court need not grant leave to amend where amendment would be futile and here, the Court finds that Plaintiffs' claims cannot be salvaged by amendment. Indeed, Plaintiffs have failed to identify any additional allegations that they would include in an amendment to salvage their claims, especially when considering the binding precedent rejecting their claims. *See Madera Group, LLC*, 2022 WL 1769128, at *13 (holding amendment would be futile in light of the "significant body of law in the Ninth Circuit and the California Courts

of Appeal that reject similar claims," and "Plaintiff's failure to identify any additional allegations that it would include . . ."); *see also W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 498 F. Supp. 3d 1233, 1242 (C.D. Cal. 2020) (same); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, 492 F. Supp. 3d 1051, 1058 (C.D. Cal. 2020) (same). Accordingly, leave to amend the operative complaint is not appropriate.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings in its entirety. This matter is **DISMISSED WITH PREJUDICE**. Defendant is **ORDERED** to submit a proposed judgment within fourteen (14) days of the issuance of this Order. The Pretrial Conference and Jury Trial dates are vacated.

**IT IS SO ORDERED.**

Dated: July 27, 2022

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

16.